GEORGE C. SHUPEE V. RAILROAD COMMISSION OF TEXAS.

No. 6479. Decided June 30, 1934.
(73 S. W., 2d Series, 505.)

*Hardy Hollers* and *Hart, Patterson & Hart,* all of Austin, for plaintiff in error.

The finding of the Railroad Commission as to the necessity for the operation of the plaintiff's proposed bus line is not conclusive, but is subject to review by appeal to the District Court of Travis County; which has power to decide for itself whether a public necessity exists. R. S., 1925, Art. 911a, sec. 17; Railroad Commission v. Rau, 45 S. W. (2d) 413; Corporation Com. v. Seaboard Air Line Ry. Co., 161 N. C., 270, 76 S. E., 554; Middleton v. Texas Power & Light Co., 108 Texas, 96, 185 S. W., 556.

*James V. Allred,* Attorney General, *T. S. Christopher* and *J. W. Wheeler,* Assistants Attorney General, for defendant in error.

The trial court is without authority to grant either a temporary or a permanent injunction in a case of this kind for the reason that it is apparent upon the face of plaintiff's pleadings that he intends to make an extraordinary use of the highways, using the same for compensation or hire in the carriage of passengers. The plaintiff has no vested right in the use of the highways, which belong to the State of Texas, to be held in trust for the citizenship thereof, for use in the ordinary way. An injunction, either temporary or permanent, is improper. Ex parte Sterling, Adjutant General, 122 Texas, 108, 53 S. W. (2d) 294; Ex parte Phares, 122 Texas, 104, 53 S. W. (2d) 297; Stephenson v. Binford, 53 Fed. (2d) 509; Box v. Newson, 43 S. W. (2d) 981.

Even though the trial in the district court is a trial *de novo,* the court can only review the action of the Railroad Commission for the purpose of determining whether or not (1) the act is unconstitutional; (2) if the Commission exceeded its authority under the statute; (3) whether or not there was any evidence to support the order of the Commission; and (4) of ascertaining whether or not the order of the Commission was vitiated by fraud, accident or mistake. McCollum v. Adams, 110 S. W., 526; Brazoria Ind. Sch. Dist. v. Weems, 295 S. W., 268; Dallas v. Mosley, 286 S. W., 497; Davis v. Hemphill, 243 S. W., 691.

*Renfro, Ledbetter & McCombs* and *Wm. Andress, Jr.,* all of Dallas, filed brief as amicus curiae.

MR. JUSTICE PIERSON delivered the opinion of the Court.

This suit was brought in the District Court by George C. Shupee to set aside an order of the Railroad Commission of

Texas denying his application for a certificate of convenience and necessity to operate a bus line between San Antonio and Fort Worth. The certificate was denied by the Railroad Commission on the ground that no public necessity for such operation existed.

In the District Court Shupee alleged that the order of the Railroad Commission was unreasonable and unjust as to him, because not sustained or justified by the facts in evidence before the Commission on the hearing of his application. He alleged that in his application before the Commission he had alleged that there were two possible routes between San Antonio and Fort Worth for bus lines, one by way of New Braunfels, San Marcos, Austin, Georgetown, Belton, Waco, Hillsboro, and other intermediate points; the other through Johnson City, Burnet, Lampases, Hamilton, Walnut Springs, Caulk, Glen Rose, Cleburne, and other intermediate points; that he had further alleged that there was already a bus line operating over the first route, which was a frequently travelled highway, but that there was a total lack of existing transportation facilities over the second route, and an inadequacy of service existing between San Antonio and Fort Worth, as well as between the intermediate points on the second route; that the latter route, over which he proposed to operate a bus line, would shorten the distance between the termini cities by 20 miles, save travelling time, and render the operation of the bus line less dangerous than that established on the other route, because less frequently travelled; and that the highways along the proposed route were in good condition and capable of being used by buses at all times of the year. Shupee further alleged that he introduced evidence sustaining the aforementioned facts before the Commission, and that such facts were proved on the hearing of the application.

A general demurrer interposed by the Commission was overruled, after which the Commission answered with a general denial. The trial was before the court without a jury, and resulted in a judgment setting aside the order of the Commission denying the permit as being "unjust and unreasonable" as to Shupee, and enjoining the Commission from interfering with the operation of the bus line over the route designated, except to regulate and supervise the operation as required by the statutes.

The Court of Civil Appeals reversed the order of the trial court and dissolved the injunction; from which judgment and order Shupee prosecuted a writ of error to the Supreme Court.

The record shows that the Commission held three public

hearings on plaintiff in error's application for the certificate of convenience and necessity to operate the proposed bus line,—one at Fort Worth, another at San Antonio, and the last at Austin. At these hearings numerous witnesses gave opinions as to the existence or nonexistence of a public necessity for the bus line. There were also several petitions of citizens living along the proposed route stating that the bus line was badly needed. There was in evidence before the Commission a map and plat delineating the existing route and bus operations, as well as the proposed route and bus operations. There was no evidence that the service existing was inadequate as to traffic between the termini cities, nor that connecting bus operations with towns on the proposed route were inadequate in any respect.

The evidence before the Commission showed that most of the proposed route was maintained by local county authorities; only a small part being entitled to State maintenance. The route was shown to be passable at all times, but there was evidence that portions of the route were extremely hard to negotiate in wet weather. There was very little hard-surfaced road on the entire route. The population of the intermediate towns over a distance of 317 miles was about 15,000.

The main contentions of both plaintiff in error and defendant in error may be stated as follows:

Shupee contends that the trial court on the appeal from the order of the Commission should substitute its own finding based upon a preponderance of the evidence adduced on the trial de novo for that of the Commission.

The Commission contends that before its order may be set aside it must be alleged and proved that there was no evidence adduced on the hearing of the application to support the order denying the certificate; or that, having regard to the interests of both the public and the proposed carrier, it is so arbitrary as to be beyond the exercise of the reasonable discretion and judgment vested by the statutes in the Commission to deny such carrier the right to operate a bus line over the designated public highways of the State.

It is our conclusion, after examining the authorities, that the judgment of the Court of Civil Appeals was correct and is sustained by the great weight of authority, and that it should be affirmed.

■ The highways of Texas belong to the State. Robbins et al. v. Limestone County et al., 114 Texas, 345, 268 S. W., 915.

The State has the right and authority to permit vehicles.

for hire to run over its highways, under such rules and restrictions as it may see fit to impose; or it may prohibit the use of its highways for such purposes altogether.

■ The State, through its Legislature, has adopted a policy of permitting the use of its highways by vehicles for hire, under certain conditions and regulations. It has created the Railroad Commission as its agent to act for it in determining whether or not trucks or buses should be permitted or licensed to operate over particular routes, and to regulate them in such operations. As bearing on the issue, we quote the following provisions of the statute:

"Art. 911a. Motor bus transportation and regulation by roadroad commission.

    *     *     *     *     *

"Sec. 2. All motor-bus companies, as defined herein, are hereby declared to be 'common carriers' and subject to regulation by the State of Texas, and shall not operate any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation or hire over any public highway in this State except in accordance with the provision of this Act. * * *

"Sec. 3. It is hereby declared that when existing transportation facilities on any highway in this State do not provide passenger service which the Commission shall deem adequate to provide for public convenience on such highway, then such inadequacy of service shall be considered as creating a condition wherein the public convenience and necessity require the designation of, and provision for, additional service on such highway, and it shall be the duty of the Commission to issue certificate or certificates as herein provided, *if in the opinion of said Commission* the issuance of such certificate will promote the public welfare. (Italics ours.)

    *     *     *     *     *

"Sec. 6. The Commission is hereby vested with power and authority, and it is hereby made its duty upon the filing of an application for a certificate of public convenience and necessity, to ascertain and determine under such rules and regulations as it may promulgate, after considering existing transportation facilities on such highway, the service rendered and capable of being rendered thereby, and the demand for, or need of additional service, if there exists a public necessity for such service, and if public convenience will be promoted by granting said application and permitting the operating of motor vehicles on the highways designated in such application, as a common carrier for hire.

"Sec. 7. The Commission shall also ascertain and determine if a particular highway or highways designated in said application are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant, without unreasonable interference with the use of such highway or highways by the general public for highway purposes. And if the Commission shall determine, after hearing that the service rendered or capable of being rendered by existing transportation facilities or agencies on such highways is reasonably adequate, or that public convenience on such highways would not be promoted by granting of said application and the operation of motor vehicles on the public highways therein designated, or that such highway or highways are not in such state of repair, or are already subject to such use as would not permit of the use sought to be made by the applicant without unreasonable interference with the use of such highway or highways by the general public for highway purposes, then in either or any (of) such event said application may be denied and said certificate refused, otherwise the application shall be granted and the certificate issued upon such terms and conditions as said Commission may impose and subject to such rules and regulations as it may thereafter prescribe.

 *  *  *  *  *

"Sec. 17. If any such auto transportation company, association, corporation, or other party at interest be dissatisfied with any decision, rate, charge, rule, order, act, or regulation adopted by the Commission, such dissatisfied person, association, corporation, or party may file a petition setting forth the particular objection to such decision, rate, charge, rule, order, act, or regulations, or to either or all of them in the district court in Travis County, Texas, against said Commission as defendant. Said action * * * shall be tried and determined as other civil causes in a said court; * * * In all trials under this section the burden of proof shall rest upon the plaintiff who must show by the preponderance of evidence that the decisions * * * complained of are unreasonable and unjust to it or them."

While the State permits the use of its highways by vehicles for hire, it undertakes to so limit and regulate such use as to secure and safeguard the safety, convenience, and necessity of the public. By law it created the Railroad Commission its administrative body to act for it. Said body is clothed with all the powers necessary to accomplish the purposes assigned to it.

■ We think it clear that the intention of the statutory provisions is that the decisions of the Railroad Commission upon the granting or refusing of any permit to operate a bus line over any highways in Texas should be final and conclusive, unless it acted unreasonably and unlawfully, or unless its. decisions had no basis in fact and were arbitrary or capricious. In other words, if the findings and orders of the Railroad Commission in such matters had any reasonable basis in fact, and were not shown to be arbitrary and unreasonable, they must be supported by the court. The court cannot substitute its judgment for that of the Commission, unless it be shown that said judgment of the Commission was without foundation in fact, or was unreasonable or arbitrary. The rule is stated generally in 42 Corpus Juris, pages 691, 692, as follows:

"The court will review the facts with a view of determining whether the commission has acted unreasonably and unlawfully, and may reverse and direct the commission to carry out its mandate if the result is different from that reached by the commission, as where it is found that the findings or orders of the commission are without substantial foundation in the evidence and are unreasonable or arbitrary. But the reviewing court cannot substitute its judgment for that of the commission and disturb its finding, where there is any substantial basis in evidence for such finding, or where the ruling of the commission is not capricious or arbitrary, but is reasonable and lawful. Under some statutes the orders of the commission in such cases are prima facie evidence of the reasonableness and correctness thereof, and the burden of establishing the contrary rests on the one attacking them."

In State v. Great Northern Ry. Co., 130 Minn., 57, 153 N. W., 247, the Supreme Court of Minnesota said:

"The legislature never intended that the court should put itself in the place of the commission, try the matter anew as an administrative body, substituting its findings for those ·of the commission. A statute which so provided would be unconstitutional as a delegation to the judiciary of non-judicial powers."

In Modeste v. Public Utilities Com., 97 Conn., 453, 117 Atl., 494, the Supreme Court of Connecticut, in discussing the power and duty of the Public Utilities Commission to issue certificates of public convenience and necessity for jitneys, held that the courts cannot inquire further into the action of the commission than to determine if the commission acted beyond its power or arbitrarily, and that if the commission did not so act, its decision is final and conclusive. It also said that a statute giv-

ing a court power to substitute its judgment for that of the commission would be an unconstitutional delegation of administrative power to the judiciary.

Many other authorities could be cited along this line.

Judge Blair in his able opinion in this case has very thoroughly discussed the principles upon which the Court of Civil Appeals upholds the order of the Railroad Commission in this case. He cites and quotes from cases from many States of the Union and of the United States Supreme Court in support of its holding, all in line with what we have just announced. Therefore we will not encumber this opinion by quoting from them or by citing them. They can be found in 57 S. W. (2d) 295. Judge Blair in part sums up the facts in this case as follows:

"At most appellee's evidence both before the commission and on appeal merely showed that as between the termini cities his proposed route was some few miles shorter than the existing route through Austin, and that his route was less frequently traveled by the public, and from which fact he concludes that his proposed route would be less dangerous. * * *

"There was also some evidence before the commission and on appeal as to the state and repair of the highways over which the proposed bus line was to operate. Briefly, it showed some character of state designation of the entire route by the highway commission, but that only a part of it was entitled to state maintenance by the highway department, the remainder to be maintained by local county authorities through which the route passed. And while the evidence showed the proposed route passable at all times, it was admitted by appellee on his hearing before the commission that at least one part of the route was hard to negotiate by automobile in wet weather. A maintenance engineer for the state highway department testified that while the entire route proposed by appellee was well graded and passable at all times, still it had 'sections of caliche that are hard formations, and sections of black dirt that get soft in wet weather * * * and cut up very badly'; and that there was very little hard-surfaced road on the entire route. Appellee proposed to operate daily four eighteen passenger sedan coaches over the proposed route. This operation would in consequence add to the burdens upon these highways and would necessarily result in injury to them; interfere with their primary use by the public generally, endanger and inconvenience the public in their use of these highways; and would increase the tax burden for their maintenance. And as to the permanency of the proposed route, appellee showed the population of the inter-

mediate towns over a distance of 317 miles to be about 15,000; and testified that in his opinion the traffic on the route would pay, but that actual operation would establish this."

The judgment of the Court of Civil Appeals should be affirmed; and it is so ordered.