## TEXAS LIQUOR CONTROL BOARD v. FLOYD.

No. 13805.

Court of Civil Appeals of Texas. Fort Worth.

April 29, 1938.

Rehearing Denied May 27, 1938.

William McCraw, Atty. Gen., and Victor W. Bouldin and Joe Sharp, Asst. Attys. Gen., for appellant.

Mays & Mays, of Fort Worth, for appellee.

SPEER, Justice.

This is an appeal by the Texas Liquor Control Board from a judgment of the 96th district court of Tarrant County, Texas, setting aside an order of the Board cancelling a permit theretofore issued to J. J. Floyd, to sell wine and malt liquors, at 102–A West Exchange Avenue, in the City of Fort Worth, which permit, by its terms, expired January 5th, 1938.

Texas Liquor Control Act was designated by the Legislature as such, and is divided into two parts, which are now Articles 666–1 et seq. and 667–1 et seq., Vernon's Texas Penal Code. For convenience, in this opinion we shall refer to the Act by Penal Code numbers and subdivisions thereof, without repetition of the legal title of the Act. We shall refer to the Texas Liquor Control Board as appellant, and to J. J. Floyd as appellee.

On October 18th, 1937, appellant issued and caused to be served upon appellee, a notice to appear before it on October 25th, 1937, at a named place in the City of Austin, Travis County, Texas, to show cause why appellee's wine and beer permit should not be cancelled.

The notice contained the alleged causes for cancellation of the permit, and were

embraced in two counts. The substance of each was that (a) on about May 26th, 1937, the appellee being the holder of wine and beer permit No. 11,652, and engaged in the business authorized thereby, had in his possession at that time, at and near said licensed premises, liquors, produced by the process of distillation, towit, whiskey; (b) at the time and place last mentioned, appellee was such holder of said license and permit, and that he had in his employ on the licensed premises one Dub Livingston, who at the time and place mentioned in the first count "did then and there have in his possession at and near the premises, liquor produced by the process of distillation, towit, whiskey."

The appellee filed his answer denying the charges. At the time and place designated in the notice, a hearing was had before Bert Ford, the Administrator of appellant. The appellee did not attend the hearing; all matters of fact were submitted to the administrator upon ex parte affidavits. Because of the conclusions we have reached with reference to a disposition of this appeal, we deem it advisable to quote the affidavits relied upon by the appellant, but will only make what we consider a fair summary of those relied upon by appellee. This is because, as we shall presently show, the contents of the affidavits tendered by appellant and those offered by appellee, all of which we shall refer to as the testimony, are hopelessly conflicting; the Administrator believed the testimony offered by appellant and based his order thereon. It must follow that he disbelieved the testimony tendered by appellee, in so far as it conflicted with the former.

Omitting the formal parts, signatures and notary's jurat, the affidavits offered in evidence by appellant before the Administrator were as follows:

"State of Texas, County of Tarrant.

"Before me, the undersigned authority, this day personally appeared W. F. Dunsmore, Inspector for the Texas Liquor Control Board, to me well known, and who, after being by me duly sworn, deposes and says:

"That on the 26th day of May, 1937, at 12:30 A. M. o'clock in the County of Tarrant, City of Fort Worth, I, accompanied by Inspector Gantt, entered 102 West Exchange Street, no name appearing on the window designating the place. We seated ourselves at a booth to the left of the bar and ordered half a pint of Canadian Club Whiskey and set-up from a waitress, who was later identified as 'Billie'. She went to the bar and said something to the bartender, 'Dub' Livingston. She came back to us and said, 'We would have to wait a few minutes until the police squad car left the front of the place, so that 'Dub' could go into the package store and get the whiskey for us.'

"I then left the booth, went to the bar and stood there and saw 'Dub' take a key off a nail behind the bar. He went to the front entrance and used the key to unlock the door into the package store adjoining. This package store is partitioned off from the bar room by glass, and I, as well as Inspector Gantt saw 'Dub' Livingston take a half pint of Canadian Club Whiskey off the shelf, come out of the package store, lock the door and give the whiskey to 'Billie', the waitress. She in turn gave it to me, telling me that the price was the same $1.15. I gave her two one-dollar bills. She went to the bar, handed the money to 'Dub' Livingston, who rang up sale of $1.15 on cash register and handed 'Billie' the change which she brought me, it being the amount of $.85. This sale was consummated at 12:45 A. M.

"The description of the bar-room is as follows: On entering, the bar is at the right about fifteen feet long. On the left is the package store, this being the main room. In the rear on the left side is a room 30' x 30', in which there are booths with tables. The inspectors, after making the above purchase, left the place, and the half pint of whiskey purchased was labeled and properly marked by myself and Inspector Gantt for evidence, and later turned over to Mr. Pinson, Deputy Supervisor, Fort Worth, Texas.

"After the waitress, Billie, had brought half pint of whiskey to the table, she asked that I give her a drink, which I did, and Inspector Gantt and I consumed a small part of whiskey on the premises.

"(Signed) William Dunsmore."

"State of Texas, County of Tarrant.

"Before me, the undersigned authority, this day personally appeared E. M. Gantt, Inspector for the Texas Liquor Control Board, to me well known, and who, after being by me duly sworn, deposes and says:

"That on the 26th day of May, 1937, at 12:30 A. M. o'clock in the County of Tarrant, City of Fort Worth, I accompanied Inspector W. F. Dunsmore, and we entered

102 West Exchange Street, which is a beer parlor, and seated ourselves in a booth adjoining the main room in which the bar is located.·

"A waitress, known as Billie, came to our table and asked what we wanted. Inspector Dunsmore ordered a half pint of Canadian Club Whiskey and a set-up. 'Billie' went to the bartender, talked to him, returned to our tables and told Dunsmore we would have to wait for the whiskey until the police squad car left in front of the place, so that 'Dub' the bartender could go into the package store and get the whiskey for us. Inspector Dunsmore left the table and went to the bar where I followed him and saw 'Dub' open the door of the package store with a key and after entering, take a bottle of whiskey from the shelf and upon reentering the bar-room again, he handed the bottle of whiskey to 'Billie' the waitress, who brought 'same to our table, and she asked Dunsmore for a drink, which was give her. Both Mr. Dunsmore and I took a small drink from the bottle. We then left and later labeled and marked the container properly for evidence.

"(Signed) E. M. Gantt."

The substance of the affidavits offered by appellee is as follows: Appellee Floyd testified he was the owner of the wine and beer permit or license mentioned in the notice, and that his place of business was at 102-A West Exchange Avenue; during the life of the license he had not had in his possession on the premises any whiskey nor had he ever known of any one of his employees having such in their possession there; he had at all times instructed his employees to strictly keep any and all liquors not licensed under his permit away from the premises; that if any employee had, during the licensed period, possessed or kept any such prohibited beverages there, it was without his knowledge and against his orders. He served eats and beer at his place and it was common, out of three or four hundred customers per day and night, for some one or more to leave whiskey in bottles about the premises and they would be found in cleaning up, and he had instructed the porters to remove it promptly from the place; the customers who so left whiskey invariably brought it with them; he had told his waitresses and all employees that such liquors must not be left about the premises. He had never had a permit cancelled nor criminal charges filed against him.

Dub Livingston testified that the accusation contained in the notice to Floyd to the effect that he (the witness) had in his possession on the licensed premises, whiskey, at the time named, was untrue; that he never at any time either before, at the time of, or after that named in the charge, had in his possession any whiskey on or near the premises; that Floyd had instructed all employees not to possess whiskey there; the representatives of the Liquor Control Board made thorough searches of those premises, both before and after the time named in the notice, and so far as he knew, they never found any whiskey on or near the premises.

Maryetta Dunaway and Minerva Jeffries both testified they were working as waitresses for appellee at 102-A West Exchange Avenue, before and after May 26th, 1937; representatives of the Liquor Board often came in the place and inspected it and so far as the witnesses knew, no whiskey was ever found at or near the premises; that if any whiskey was found on May 26th, 1937, neither of them heard of it and they were there at the time; neither of them ever knew of Dub Livingston or any other employee having any whiskey on the premises; they had instructions from appellee not to have in their possession whiskey about the place, and they had obeyed those instructions; it was a common occurrence to find parts of bottles of whiskey about the place after large numbers of customers had been there through the day and night, but their instructions from appellee were to remove it promptly, and they had done so.

The Administrator entered an order cancelling the permit of appellee and under the provisions of Article 666–14, Vernon's P.C., he appealed to the district court of Tarrant County, where a trial was had; that court heard the appeal upon testimony offered by appellee and the appellant (Board). A portion·of the testimony adduced by the appellee was not before the Administrator, and two of the persons who testified before the Administrator were not offered in the hearing before the court. The district court set aside the order of cancellation made by the Administrator and enjoined the representatives of the appellant from thereafter in any·manner interfering with the appellee in the operation

of his business under the license and permit theretofore issued to him. From the judgment so entered the Texas Liquor Control Board has appealed to this court.

We think the learned trial court proceeded upon a misapprehension of the law applicable to such appeals as the one here under consideration.

By the provisions of the Act above mentioned, under which this appeal was brought to the district court, it is, among other things, said: "The proceeding on appeal shall be against the Board alone as defendant and the trial shall be de novo under the same rules as ordinary civil suits, with the following exceptions * . * * ." The exceptions mentioned are with reference to speedy trials, before the court without the aid of a jury, and relate to suspension of the order of the Board pending the hearing, as well as to superseding the judgment of that court pending an appeal therefrom.

The de novo hearing before the district court, as provided in the Act, does not mean that the issue of whether or not a permittee's license shall be cancelled is to be heard and determined anew by the court in the same manner as if no hearing had been had by the Board or its Administrator. The Texas Liquor Control Board is by virtue of the law an administrative branch of the State Government, to which has been delegated, by law, certain functions, among which are determining in the first place to whom and when shall certain privileges be extended to persons to sell liquors, and second, whether or not such persons so favored have breached the conditions under which the privilege has been granted. The Board's decision on the questions, when supported by substantial testimony, and is not determined capriciously or arbitrarily, will become binding upon the reviewing court. It has been frequently held that the district court, upon such appeals, may only determine whether or not there was substantial testimony before the Board to support its findings, or did it act capriciously or arbitrarily. As we view the law in such cases as this, the district court may not hear testimony which was not produced before the Board or its Administrator and determine, even from a preponderance thereof, whether or not a dealer's license shall be cancelled. The court has not the power to substitute its judgment for that of the Board, unless it appears there was no testimony of probative and

substantial effect before the Board to support its judgment and decree, or that the Board acted arbitrarily or capriciously in cancelling the license. Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W. 2d 227; Bradley v. Texas Liquor Control Board, Tex.Civ.App., 108 S.W.2d 300; Shupee v. Railroad Comm., 123 Tex. 521, 73 S.W.2d 505. In the last cited case, the Supreme Court had under consideration an order by the Railroad Commission from which an appeal was taken to the courts, as provided by statute, to determine if the order was a reasonable one. More especially applicable to the statute here under consideration, relating to trials de novo, the court said (page 508): "We think it clear that the intention of the statutory provisions is that the decisions of the Railroad Commission upon the granting or refusing of any permit to operate a bus line over any highways in Texas should be final and conclusive, unless it acted unreasonably and unlawfully, or unless its decisions had no basis in fact and were arbitrary or capricious. In other words, if the findings and orders of the Railroad Commission in such matters had any reasonable basis in fact, and were not shown to be arbitrary and unreasonable, they must be supported by the court. The court cannot substitute its judgment for that of the commission, unless it be shown that said judgment of the commission was without foundation in fact, or was unreasonable or arbitrary."

In this connection, it was observed, in Bradley v. Texas Liquor Control Board, Tex.Civ.App., 108 S.W.2d 300, after holding the trial court could only review the action of the Board, pointing out the error of the trial court, it was said (page 302): "But in the instant case the parties and the trial court seem to' have considered the matter of cancellation of the permit to sell liquor as a civil suit or cause of action based upon some character of civil right; and that the above-quoted statute entitled appellant to a trial de novo on this appeal of that suit or cause of action just as if the board had not acted on the matter, the board having assumed the burden of proof. * * *" The opinion goes on at great length and shows that the assumptions of the trial court as to its functions in such cases are erroneous.

In the case of Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W.2d 227, a very exhaustive analysis is made

of the Texas Liquor Control Act, and the decisions construing it, together with analogous cases reviewing other Boards and Commissions legally designated as such by statutes. Especially referring to the provisions of the Act conferring the right of appeal from the rulings of the Board, it is there said (page 230): "In the type of de novo trial as provided for in section 14, article 1, [Art. 666—14, Vernon's Texas P.C.] of this act, which permits the court to hear the evidence anew, the court's power is limited to a determination of whether or not the administrative body (the board or its administrator) acted within the scope of its delegated authority; (2) based its order of cancellation upon substantial evidence which was sufficient to support it; or (3) did it act arbitrarily and capriciously. Bradley v. Texas Liquor Control Board, Tex.Civ.App., 108 S.W.2d 300; Shupee v. Railroad Comm., 123 Tex. 521, 73 S.W.2d 505; Smith County Oil & Gas Co. v. Humble Oil & Ref. Co., Tex. Civ.App., 112 S.W.2d 220 * * *" Many other cases are there cited. The court, in the same case, further says: "Nor will the courts in such cases review conclusions of the administrative body based upon conflicting evidence; but will sustain its order if based upon substantial evidence. Such is the holding in the case of Railroad Comm. v. Shupee, Tex.Civ.App., 57 S.W. 2d 295, affirmed 123 Tex. 521, 73 S.W.2d 505, and Railroad Comm. v. Lamb, Tex. Civ.App., 81 S.W.2d 161. * * *" Again, in the same case, referring to facts very similar to those hereunder considered, the court said: "The Liquor Control Board had before it the testimony of two of its inspectors who had each purchased a scotch and soda and gin fizz on four separate days in appellee's place of business, * * * these inspectors, the chemist, and other witnesses testified in the hearing in the district court. Appellee and his employees denied these sales. This evidence is sufficient to sustain the findings made in the order complained of by appellee; and was sufficient evidence before the board at the hearing to authorize it to cancel appellee's license; and also to show that the board did not act arbitrarily or capriciously in canceling the license."

Humble Oil & Ref. Co. v. Railroad Comm., Tex.Civ.App., 112 S.W.2d 222, involved a review by the district court of an order passed by the Railroad Commission. The appellate procedure in such cases being very similar to those in cases appealed from the Liquor Control Board. The settled rule is there announced that orders and findings of fact by a regulatory board or commission are not reviewable in a direct proceeding on appeal unless they are unsupported by evidence. More than a dozen decisions by the U. S. Supreme Court are cited in support of the rule. Referring to the well settled principle involved in appellate procedure when there is evidence to support a jury finding it is said by that court (page 226): "It is a familiar rule of law that a jury's finding of fact is not reviewable in a direct proceeding on appeal, unless it is unsupported by evidence. The same is true of orders and findings of fact by a regulatory board or commission. The decision of such a board has at least as high standing in regard to finality as a verdict or finding of a jury. Tex.Jur., Vol. 3, p. 1088 et seq."

In this case, as appears above, one of the counts in the charge before the Administrator was that Livingston, an employee of appellee, at the time named, had in his possession whiskey on the premises covered by the license or permit. The facts and circumstances detailing what took place on the occasion were testified to by the two inspectors, representatives of the Board. The appellee offered the testimony of Livingston before the Administrator, who positively denied the facts testified to by the inspectors; other testimony offered was to the effect that the witnesses did not know of any such transaction, although two of them were working at the place at the time. Certainly the positive testimony of the two inspectors was "substantial" evidence. Then under the authorities we have cited, the entire function of the district court was to determine if that testimony was substantial, or did the Board act arbitrarily or capriciously. "Arbitrary and capricious" in many respects are synonymous terms. Webster's International Dictionary, among other things, says "Capricious" means freakish, whimsical, fickle, changeable, unsteady, arbitrary. The testimony of the inspectors, although contradicted by the agent who is charged with having had the whiskey, if believed by the Administrator who heard the case, was sufficient to meet the requirements of the law, and as stated in the Jones Case, supra, is substantial evidence, and will defeat the con-

tention that the board acted capriciously and arbitrarily in cancelling the license.

By the testimony adduced upon the trial in the district court from the appellee's bartender and from a woman whom they called "Juanita", an employee of the operator of a package store and a dance hall, at least adjacent to appellee's place of business, it was contended the inspectors who testified before the Board, and later before the court, were drinking or drunk upon the occasion they claim to have found the liquor in the possession of appellee's bartender on the premises. It is evident from the record that the trial judge believed that testimony and disbelieved that of the two inspectors, both as to finding the liquor and their denial of drunkenness. If the orders and decrees of the Board, in which the State has reposed the authority to determine the cancellation of permits, may be annulled by testimony which that body did not have an opportunity to pass upon, then the Legislature did an idle thing in delegating to the Board the authority to cancel permits. This is because few, if any, licensees would bother themselves to present to the Board at Austin any defense to charges, which, if true, would work such a forfeiture, but would await their time and present their testimony to the district court on appeal. We do not think this was the intention of the Legislature when it passed the Liquor Control Act.

In the recent case of Texas Liquor Control Board v. Eddie Blacher, 115 S.W.2d 1030, by the El Paso Court of Civil Appeals, the Board had cancelled the license of a druggist to sell on prescriptions of physicians; the district court, on appeal, had found that the defendant had never previously violated the Act, and, if given another chance, would not do so again, and such cancellation was arbitrarily done by the Board; the statement made by us is not the language of the court but is the legal effect of it. The district court set aside the order of cancellation and enjoined its enforcement. The appellate court reversed the district court, dissolved its restraining order and sustained the order of the Board in cancelling the permit. Citing as authority for its holding, Bradley v. Texas Liquor Control Board, supra; State v. De Silva, 105 Tex. 95, 145 S.W. 330; Shupee v. Railroad Comm., supra, and Texas Liquor Control Board

v. Jones, supra. To these authorities may be added the case of Texas Liquor Control Board v. G. G. Tschoerner, 117 S.W.2d 121, by the Austin Court of Civil Appeals, rendered April 27th, 1938.

It would unnecessarily extend this discussion to comment upon the various decisions in cases involved here, but those cited will lead, by reference to others bearing on the points involved.

Appellee has made two cross assignments of error, and has earnestly insisted that in the event we reverse the judgment of the district court, that we pay these assignments special attention. These cross assignments are in effect: (a) Since the Act, at Section 19 (d) of Art. 2 (Art. 667—19(d), Vernon's Texas Penal Code,) provides that a license may be cancelled if the permittee "possessed or permitted to be possessed by his agents or servants * * * on premises covered by his license * * * alcoholic beverage that he is not authorized by law to sell, * * *" and since there is no testimony before the Administrator that appellee knew or had knowledge that his employee Livingston was in possession of prohibited liquors on the premises, the Board was without authority to cancel the license. And (b) that appellee's license having expired on January 5th, 1938, the questions involved in this appeal are now moot.

Relating to the first cross assignment, it may be said that there was no testimony shown to have been heard by the Administrator that appellee in person had liquor on the premises, as was charged in the first count shown in the statement of the case by us above; but the second count charged it to have been in the possession of Dub Livingston, who was shown to have been appellee's employee, commonly referred to as the bartender. Hence, it is claimed that because appellee had no knowledge of that alleged fact, he could not in law be said to have "permitted" his employee to possess the liquor on the premises.

It has been held that the Act under consideration must be liberally construed by the courts so as to make it effective, according to the expressed and implied intention of the Legislature. Article 666—2, Vernon's Texas Penal Code; Mayhew v. Power, Tex.Civ.App., 104 S.W.2d 642; Flowers v. Shearer, Tex.Civ.

App., 107 S.W.2d 1049, and Akers et al. v. Remington, 115 S.W.2d 714, by this court.

 It is said in 49 C.J. p. 924, sect. 2, under "Permit" as a verb: "* * * It is a word of considerable elasticity. It lacks clear-cut and precise definiteness. It is not a technical word, and in English it has two significations, the first being where the mind consents to the act; the second, where the mind does not affirmatively agree to the act, but having the right and means to interfere to prevent it from transpiring, fails to do so. It is a word, therefore, ordinarily implying knowledge and consent, although such rule is not without exceptions. * * *" It would follow that even if the Board was wholly dependent upon the part of the Act referred to for authority to cancel the permit, it would be supported by at least the secondary meaning of the word. When we consider the Legislative Act as a whole, it may be said that the latter definition was intended to apply. In the Act, at Article 666—3, subsection (c), we find a provision which prohibits the licensee or any one of his agents, servants or employees, to possess any liquor on the premises which is not permitted by the license to be sold, and at Article 666—12, it is provided that the Board or Administrator may cancel the license if (2) the permittee has violated any provision of the Act. So, if the Administrator believed the testimony of the two inspectors to the effect that an employee had possessed whiskey on the premises at the time charged, the license could be revoked under the last mentioned part of the Act, without a reliance upon the one condition that the licensee had "permitted" his employee to possess whiskey on the premises.

In this connection, it is said, in Bradley v. Texas Liquor Control Board, supra: "The cancellation of a certificate is a specific remedy authorized under the act for violation of the provisions of the act or rules and regulations of the board. It is not a criminal prosecution, and the permit may be canceled for the unlawful acts of the agent the same as if they had been the acts of appellant himself. The law is settled in this state that a licensee or permittee is responsible for the acts of his agent, employee, or servant, which violate the terms of the license or permit, even though the acts are against the instruc-

tions of the licensee or permittee. Edgar v. State, 46 Tex.Civ.App. 171, 102 S.W. 439; Joliff v. State, 53 Tex.Cr.R. 61, 109 S.W. 176, and cases there cited." There is no merit in the cross assignment.

 Second cross assignment of error asserts that the issues now before us are moot, because the license of appellee expired in January last. Upon first casual thought one would think the assignment good, but not so upon considering the law as it stands. By article 667—22 of the Act, it is provided that if a beer license be cancelled, as provided by law, the permittee shall not thereafter be entitled to a license or permit for that purpose within the period of one year from the date of cancellation; this is a valuable right at issue as between the parties to this suit. The question has been definitely settled against the contention of appellee in the cases of Texas Liquor Control Board v. Eddie Blacher, supra, and Texas Liquor Control Board v. Warfield, Tex.Civ.App., 110 S.W.2d 646. The cross assignment must be overruled.

 The trial court heard and entered judgment in this case upon the theory that the law authorized a determination of the facts by him as to whether or not the appellee's license should be cancelled, and that the court could substitute its judgment for that of the Board, if the facts heard by the court did not support the order entered by the Board. This is not the rule in this state; but the district court's sole authority is to determine if there was substantial testimony before the Board sufficient to support the order, and was the judgment of cancellation by the Board entered capriciously or arbitrarily. We think since the Board gave credence and verity to the testimony of the witnesses before it, the evidence was substantial and of sufficient probative force to support the order; it will not be assumed that the Administrator made the order of cancellation capriciously and arbitrarily when the testimony supported the conclusions reached.

We have not discussed the appellant's assignments of error in detail as presented; but suffice it to say every point discussed by us herein, and much more, have been raised by appellant in the record and briefs. We are sustaining such of the contentions made as these conclusions indicate, and for these reasons the judgment

of the trial court is reversed, and the injunction issued by it is dissolved and judgment is here rendered sustaining the order of the Administrator made and entered on the 25th day of October, 1937, cancelling the wine and beer permit No. 11,652, theretofore issued to appellee, J. J. Floyd.

Reversed and rendered.