

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXXXXN
ATTORNEY GENERAL

The Honorable Railroad Commission of Texas
Austin, Texas

Attention:  Mr. Commissioner, Ernest O. Thompson
              Mr. Commissioner, Beauford H. Jester

Gentlemen:               Opinion No. 0-6986

                         Re:  Chief Engineer of the Rail-
                             road Commission-authority of
                             the Commission to appoint and
                             pay salary of.

      This will acknowledge receipt of the Commissioners' letter
of December 10, 1945, the pertinent provisions of which are
quoted for clarity:

      "The Railroad Commission of Texas finds it nec-
essary to employ a Chief Engineer of the Railroad
Commission and to pay him a salary of $7,750 per year,
being the same salary paid the State Highway Engineer,
the chief engineer of the State Highway Department, in
order that the Oil and Gas Division, as well as the
other Divisions of the Railroad Commission may prop-
erly discharge the duties and responsibilities of the
Railroad Commission.

      "There is no similar position in the Railroad
Commission.

      "We propose that this position of Chief Engineer
be set up and the salary paid pursuant to the authority
granted by Sub-Paragraph D, Paragraph 14 of Section 2
under General Provisions of the Departmental Appropria-
tion Bill of the 49th Legislature, Regular Session.

      "If there is any other appropriated money or tax
money that could also be used to take care of the sal-
ary of the proposed Chief Engineer, we would appreciate
your advising us of same. * * *"

      As a predicate for a correct consideration of and reply
to the Commissioners' inquiry, and to understand the probable
scope and importance of the duties of its Chief Engineer, it is

believed that it will be helpful to state briefly the authority, powers, duties and responsibilities of the Commission. It has been said that the Railroad Commission of Texas is one of the most powerful administrative bodies in the United States. The Commission was established April 3, 1891, by the Legislature of Texas, pursuant to Section 30, Article 16, of the Constitution of Texas. Although originally established to regulate railroads, additional duties and responsibilities of a regulatory nature have been imposed upon the Commission, which action of the Legislature has been held to be constitutional as against the objection that the Railroad Commission is a constitutional body upon which there cannot be imposed duties foreign to its purpose as a Railroad Commission. City of Denison v. Municipal Gas Company (Civ. App.) 257 S.W. 616.

In addition to its regulatory power over railroads, the Commission has been given extensive regulatory powers over the production of oil and gas, gas utilities, common purchasers of natural gas, operators of pipelines, transportation of oil and gas, express companies, public wharves, docks, piers, elevators, warehouses, sheds, tanks, and other property used in connection therewith and the operators thereof. These powers are well known and for the sake of brevity, citation and applicable laws is omitted.

The Railroad Commission has been held by the courts to be a quasi-judicial body. Aransas Harbor Terminal Railway Company v. Taber (Com. App.) 235 S.W. 841. It has likewise been held by the courts to be a quasi-legislative body, in that it has the power and duty to promulgate and enforce rules and regulations which, if within the limits of the power delegated to it by the Legislature, have the dignity of legislation. Gulf, Colorado and Santa Fe Railway Company v. State, 120 S.W. 1029, error refused. Therefore, the Commission's interpretation of the statutes involved in its inquiry is entitled to great weight.

The Railroad Commission has been given extensive and ample authority by several general acts of the Legislature to employ personnel necessary to carry out its duties and responsibilities, which general acts, it must be assumed, the Legislature had in mind when it passed the current appropriation bill and in particular made appropriations to the Commission to cover contingent expenses.

In addition to the authority contained in the current appropriation bill referred to in the Commission's letter, the Commission has the authority to employ sworn experts to inspect and assist it when needed in ascertaining the cost of railways. Article 6466, V.A.C.S. It has the power to appoint a chief supervisor of its oil and gas division, a chief deputy supervisor,

other deputy supervisors and "shall employ such other assistants and clerical help as may be necessary for the same purpose". Article 6030, V.A.C.S. Also for the oil and gas division, the Commission is "directed to employ such supervisors . . . and umpires as may be necessary to carry out the provisions of this Act and are related laws and orders, rules and regulations of such commission make thereunder, and it shall employ such other assistants and clerical help as may be necessary from time to time." Article 6049c, Sec. 23, V.A.C.S.

The Commission may "employ and appoint, from time to time, such experts, assistants, engineers, clerks and other persons as it deems necessary to enable it at all times to . . . . inspect all property and records of the utilities subject to the provisions hereof, and to perform such other services as may be directed by the Commission under its authority. Such persons and employees of the Commission shall be paid for the services rendered such sums as the Commission may fix . . . subject to the approval of the Board of Control." Article 6065, V.A.C.S. And it may "appoint from time to time such experts and other help in addition to its present force as may be deemed necessary to enable it to at all times properly administer and enforce this Act." Article 911a, Sec. 16, V.A.C.S., having to do with regulation of motor carriers. In the opinion of the writer, the foregoing statutes contain ample authority for the Commission to appoint a Chief Engineer, if such action is considered necessary for the proper discharge of its duties.

In submitting the above-quoted request, the Commission has made two significant findings: (1) that it finds "it necessary to employ a Chief Engineer of the Railroad Commission" and (2) that "there is no similar position in the Railroad Commission." The dignity of these findings and the regard which must be accorded them by the Attorney General is considered to be the same as that accorded such findings of the Commission by the Courts of this State. Although these findings are not orders of the exact character which have been before the Courts of the State on numerous occasions, they are findings made in connection with the internal administration of this important body, and it is assumed they will be incorporated in an appropriate order in the event the Commission's questions are answered in the affirmative; the Attorney General must assume that the findings have ample support in fact, although the facts in support of same are not set out in detail, and he must accept such findings in the absence of clear and satisfactory evidence that such are entirely without support in fact.

The well-known case of Shupee vs. Railroad Commission of Texas, 123 Texas, 521 73 S.W. (2d) 505 (Civ. App. opinion reported 57 S.W. (2d) 295), the law of which case was reiterated

in the recent case of the Railroad Commission of Texas, et al, vs. Metro Bus Lines, Inc., handed down by the Supreme Court of Texas on December 5, 1945, but not yet reported, clearly indicates the stature of such findings of the Commission as viewed by the Courts; and in the opinion of the writer, support the foregoing conclusion and control the Attorney General in the instant case. Other cases in which the Courts have discussed and passed upon the dignity which must be accorded rulings by administrative officers or bodies, made within the discretion vested in them by the Legislature are Cone Johnson vs. James E. Ferguson, 55 S.W. (2d) 153, and State ex. rel. Marrs, et al, vs. Abshier (Com. App.) 263 S.W. 263. The case of Marrs vs. Railroad Commission, 142 Tex. 293, is not considered to be in conflict because it turned on constitutional questions and the construction of a particular appeal statute.

The quoted letter implies that the Commission has also found as a fact that the position of Chief Engineer which it proposes to establish is comparable to that of the Chief Engineer of the State Highway Department, the State Highway Engineer. The Attorney General assumes that the Commission is familiar with the powers and duties of the State Highway Engineer, Art. 6669, V.A.C.S., as well as the professional qualifications required of the incumbent of the position, and that the two positions will be in fact comparable in all substantial respects. In the absence of facts clearly showing they are not comparable, the Attorney General is again bound by the findings of the Commission; he will not disturb or restrict the exercise of discretion duly vested in the Commission by the Legislature through the several acts herein discussed, to determine whether the positions are in fact comparable.

Since, in the writer's opinion, the Commission has ample authority to appoint a Chief Engineer, the next question is whether the Commission can compensate him for his services, or stated another way, whether or not an appropriation is currently available out of which the Chief Engineer's salary can be paid. In its letter, the Commission has stated that it is proposed that he be paid out of monies appropriated by the Departmental Appropriations Bill of the 49th Legislature, Regular Session, Senate Bill No. 317, pp. 810 to 951, Vernon's Texas Session Laws Service, and that his employment will be accomplished in accordance with sub-paragraph d, paragraph 14, Section 2 of the General Provisions of said Act, which provides as follows:

"d. Additional Employees' Compensation. When any additional employees other than those for which specific salary appropriations have been made, are employed and are to be paid out of contingent appro-

priations, such employees shall not be paid a larger amount than that provided in the regular appropriated salaries for similar positions in such department or agency, and <u>in the event there are no similar positions within such department, then such additional employee shall not be paid a larger amount than that provided for similar positions in other departments or agencies.</u> In the event laborers, skilled laborers, and mechanics cannot be obtained at the above-mentioned salary scale, then the head of such department may pay for temporary employment only not exceeding the prevailing wage scale paid in the locality where the temporary service is to be rendered." (Emphasis supplied)

The attention of the Commission is also invited to the items of appropriation for "Contingent Expenses" in its "Main Office", "Motor Transportation Division", "Oil and Gas Division", and "Gas Utilities Division", included in the Departmental Appropriations Act, and the language in each, which provides it may be used to pay "all other necessary help and expenses".

The quoted provision of the Departmental Appropriation Act, along with the specific appropriations to the Commission for "Contingent Expenses" constitutes ample authority for the Commission to employ personnel not specifically itemized, and is authority in addition to that heretofore referred to at some length. As already stated, it is the opinion of the writer that the Attorney General should and must accept the findings of the Commission relative to the necessity for the employee, the nature of his duties, the fact there is no similar position in the Railroad Commission which would furnish a "yardstick" for setting his salary, and that this position will be similar to that of the State Highway Engineer. The "Contingent Expense" items of appropriation have been made by the Legislature, to be expended "as needed" and in accordance with the discretion of the Commission, as slightly limited by the aforesaid provisions of the Act.

If the Legislature should disapprove the Commission's manner of exercising its discretion in spending these items of appropriation, and should the Legislature be of the opinion the Commission should not have a Chief Engineer at the salary proposed, then it may express itself accordingly in the next biennial appropriation bill. The Attorney General, like the Courts, will construe appropriations made for carrying out the purposes of legislation concerning the Commission liberally, to effectuate the purpose and intent of the legislation creating and financing the Commission and that giving the Commission additional power and duties; this construction is required by the case of Railroad Commission of Texas v. Galveston Chamber of Commerce, 105 T. 101,

145 S.W. 573. The Commission is in the best position to know how its contingent appropriations should be spent to effectuate the purposes of legislation concerning the Commission. It is the opinion of the writer that the Commission may compensate its Chief Engineer out of funds appropriated in the current departmental Appropriation Act, pursuant to the quoted section of "General Provisions" and the specific items hereafter referred to.

Further, as to the nature of the duties of the proposed Chief Engineer, attention is invited to the usual signification of the term or title as it is used in commercial as well as governmental organizations; the Chief Engineer is just that, the highest ranking engineer having general authority and technical supervision, as well as administrative responsibility for such supervision, over all other engineers in the organization such, for example, as division engineer, right-of-way engineer, maintenance engineer, various specialized engineers, such as petroleum, civil, electrical and mechanical. The State Highway Engineer does have such over-all supervision of engineering matters in the State Highway Department.

The title Chief Engineer was discussed by the Courts in the cases of Herrick v. Belknap's Estate, 27 Vt. (1 Williams) 673, 679, and State vs. E. V. Doyle & Co., R.I. 96 A. 605, 610, cited in 6 Words & Phrases, 747. The distinction between the Chief Engineers and other engineers may be better understood from the following quotation from the latter case:

> ". . . . . We think the words 'chief engineer' contain implications as to the authority to represent the principal which are wanting in the words 'consulting engineer.' The word 'consulting' in such connection simply designates one who is brought into conference about a case or project or some phase thereof..."

Thus, it is apparent that the items of appropriation to the Commission for "Senior Engineer", "Petroleum Engineer", "Junior Engineer", "Chief Valuation Engineer", "Valuation Engineer" and "Civil Engineer" do not comprehend the over-all duties and functions of a chief engineer in the usual signification of that term, which augments the Commission's finding that there is no similar position now in existence in the Commission, the salary for which would determine the maximum which could be paid the Chief Engineer under the limitation provided in sub-paragraph d.

Since the employee is to be the Chief Engineer of the Railroad Commission and to have cognizance over matters in the several divisions, as indicated by the Commission's letter and the title of the position, it is believed to be appropriate and proper that his salary be paid from any one of the several afore-

said contingent appropriations.  But he must not be a subordinate in one of the divisions if he is to receive a salary equivalent to that of the State Highway Engineer, for if he were a part of and limited in his authority to one of the divisions, his salary would be limited by salaries set by the Legislature for similar positions in the division, or for employees performing similar duties.  The Chief Engineer, if functionally restricted to one division, could not be paid a salary in excess of the Head of the Division's salary.  Opinion of the Attorney General, No. 0-5440, dated July 31, 1943.

The Attorney General has passed upon the provisions of prior appropriation acts for "Additional Employees' Compensation", couched in substantially the same verbiage as sub-section d, above quoted; the Opinions are Numbers 0-5440, 0-6022, 0-6659 and 0-6739. Each of these opinions can and must be distinguished upon the facts before this Department in one or more ways, but the distinction common to each is that this Department did not have before it findings on the part of a quasi-legislative, quasi-judicial body, like the Railroad Commission of Texas, (1) that the positions were necessary; (2) that no similar positions existed in the departments, the salaries for which would determine the maximum salary which could be paid as is the case here, and (3) an implied finding that the position sought to be established was similar to another specific position in the State government.  THerefore, these opinions are not considered persuasive or binding in the instant case.

In summary, you are respectfully advised that the Commission has the authority to appoint a Chief Engineer and to compensate him from any one of its contingent items of appropriation.

Yours very turly,

ATTORNEY GENERAL OF TEXAS

By s/James Noel
James Noel,
Assistant

JN:JCP:wc

cc: State Comptroller, Austin, Texas
cc: State Treasurer, Austin, Texas

APPROVED DEC 20, 1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By_s/GWB_Chairman