TEXAS EMPLOYMENT COMMISSION et al., Appellants,

v.

William G. RIDDICK et al., Appellees.

No. 8103.

Court of Civil Appeals of Texas, Texarkana.

Sept. 26, 1972.

Sam Lane, Asst. Atty. Gen. of Texas, Austin, William L. Peek, Jr., Wheeler,

**850**

Watkins, Hubbard, Patton & Peek, Texarkana, for appellants.

Jack Carter, Raffaelli, Hawkins & Carter, Texarkana, for appellees.

RAY, Justice.

This suit involved claims for unemployment compensation by appellees (plaintiffs) William G. Riddick and Lymon M. Burnett who were employees of Tri-State Motor Transit Company. Both claims were denied by appellant (defendant) Texas Employment Commission.

A strike was instituted at the Texarkana plant of the employer by certain employees who were members of the Teamsters Union, Local 823, on September 14, 1970. Appellees, who were members of such union, left their work there and actively participated in the strike by walking the picket line until August 20, 1971, when the strike was practically over.

On December 22, 1970, Donald J. Guinn, the company attorney, wrote a letter to Mr. Harry G. O'Connell, Commissioner, Federal Mediation and Conciliation Service, Springfield, Missouri, advising him that Tri-State Motor Transit Company had hired permanent replacements for all of the economic strikers, and that all available positions had been filled. The Commissioner was further notified that negotiation on the question of reinstatement of economic strikers would be as follows: "Economic strikers wishing to return to work unconditionally and writing a letter to the company to that effect will be placed on a preferential list and will be returned to work as vacancies occur in the chronological order of the receipt of their letters."

On January 13, 1971, both appellees made application to the Texas Employment Commission for unemployment benefits; and on March 19, 1971, appellees, along with three other employees, were mailed a decision and findings of the Texas Employment Commission's Appeal Trubunal holding them disqualified for unemployment benefits. On March 31, 1971, (more than ten days from the date of the mailing of the decision of the Employment Commission's Appeal Tribunal) appellee Lymon Burnett gave notice of appeal from the decision of the Appeal Tribunal to the Commission itself.

The Texas Employment Commission refused to take jurisdiction of the appeal of appellee Lymon M. Burnett because it was not timely filed. The Commission affirmed the Appeal Tribunal's decision finding appellee Riddick disqualified for unemployment benefits. Suit was timely brought in the District Court of Bowie County by appellee Riddick to set aside the final findings and decision of appellant Texas Employment Commission, and sought judgment for 26 weeks unemployment benefits against appellant Commission. The Commission and employer answered by general denial, and appellant Commission prior to the trial filed a motion to dismiss the suit of appellee Lymon M. Burnett on the grounds that he failed to timely perfect his appeal to the Commission from the Appeal Tribunal. A nonjury trial was had and the trial court rendered judgment for each of the appellees against appellant Commission for $1,170.00, plus six (6%) per cent interest per annum from the date of the judgment. Appellants promptly filed their notices of appeal to this court and urge three points of error.

Appellants, Texas Employment Commission and Tri-State Motor Transit Company, present the same points of error with Point of Error No. 1 being that the trial court erred in failing to sustain their motion to dismiss the suit of appellee Lymon M. Burnett for want of jurisdiction. We agree with the appellants, but for different reasons than those urged. Appellants contend that the trial court was without jurisdiction of the suit filed by appellee Burnett for the reason that he failed to

timely file his notice of appeal to the Commission. We do not think it is mandatory that appellee Burnett take his appeal to the Commission. He could elect not to seek Commission review by letting the decision of the Appeal Tribunal become final at the end of ten days after the date of the mailing of such decision by the Appeal Tribunal. Under Art. 5221b–4(c) Vernon's Ann.Civ.St., the decision of the Appeal Tribunal is deemed to be the final decision of the Commission, "unless within ten (10) days after the date of mailing of such decision, further appeal is initiated pursuant to subsection (e) of this Section." However, appellee only had ten days after March 29, 1971, (the date that the Appeal Tribunal's decision became final "to commence an action in a court of competent jurisdiction to seek review of the adverse decision affecting him." Article 5221b–4(i) Vernon's Annotated Civil Statutes. The record reflects that appellee Burnett filed his original petition on April 23, 1971, which was substantially in excess of ten days from March 29, 1971. Not having filed suit in court within ten days from the date that the decision of the Appeal Tribunal became final, the District Court was without jurisdiction to hear his case and appellant's motion to dismiss Burnett's suit for want of jurisdiction should have been granted by the trial court. Appellants' first point of error is sustained. Lambeth v. Texas Unemployment Compensation Commission, 362 S.W.2d 205 (Tex.Civ.App. Waco 1962, error ref'd). The ten-day limitation for commencing an action in a court of competent jurisdiction after the decision of the Commission has become final is jurisdictional. We conclude that when Appellee Burnett took no appeal to the Commission from the decision of the Appeal Tribunal within the ten days allotted for that purpose under Art. 5221b–4(c), V.A.C.S., the decision of the Appeal Tribunal automatically became the final decision of the Commission from which the appellee could have sought judicial review. However, appellee Burnett having failed to timely seek court review is without further recourse.

Appellants, in points of error 2 and 3, submit that the trial court erred "in holding there was not substantial evidence to support findings and decision of the Commission that appellees were unemployed because of their work stoppage due to a labor dispute at the plant where such appellees last worked," and that the trial court erred "in holding there was not substantial evidence to support a conclusion of the Commission that appellees were ineligible for benefits because they did not actively seek suitable work and were not genuinely attached to the labor market." The evidence shows that appellees actively participated in the strike by walking the picket line until August 20, 1971, when the strike was practically over. The evidence further reflects that appellees would not cross the picket line to inquire whether jobs were available for them, even though they knew that some of their fellow employees had made application to return to work and had been accepted and placed back on their jobs. Copies of the letter of December 22, 1970, from the Company's attorney to the Federal Mediation Commissioner had been received by appellees, in which it was stated that if they wanted to return to work unconditionally they could submit a letter to the company and be returned to work as vacancies occurred. The testimony of the truck terminal manager was that vacancies existed up until August of 1971, even though the letter from Guinn to O'Connell stated that "All available positions have now been filled."

Under the substantial evidence rule the Employment Commission's order is presumed to be valid; the burden is on the appealing party to show it is not reasonably supported by substantial evidence; preponderance of evidence is not the test (since there is no trial of fact issues); and the court cannot substitute its discretion for that of the agency. Texas Employ-

ment Commission v. Keller, 456 S.W.2d 225 (Tex.Civ.App. Waco 1970 (no writ).

Appellees contend that the Texas Employment Commission found that "As of December 22, 1970, the employer has hired permanent replacements for all of the workers on strike and all available positions were filled." However, the Commission decided that appellee Riddick was disqualified from receiving any benefits because his unemployment was due to his stoppage of work during a labor dispute at the premises where he last worked. The Appeal Tribunal concluded that, "Even though they may have been replaced by new workers, the claimants' union has not accepted this as a termination of the dispute. Claimants by their own statements contend that the dispute is still in progress. Accordingly, the provisions of this section of the Act (Art. 5221b–5(c) are in order and will be affirmed and continued."

In Trapp v. Shell Oil Company, 145 Tex. 323, 198 S.W.2d 424 (Tex.Sup.1946) the Supreme Court concluded at page 440 that the evidence to be reviewed was that admitted before the court, not that admitted before the agency. "Evidently, the reason for this requirement was that the Supreme Court believed it would be alien to the law of Texas to require a court to be bound by evidence and fact findings of an administrative agency, where that body was not trained in the rules of evidence. The irony of this reasoning is that under the Texas substantial evidence rule, the trial court only passes upon a question of law and is therefore barred from making any factual findings, even where the facts are highly controverted." 23 Baylor Law Review 38 (1971).

In Texas, the substantial evidence rule had its origin in Shupee v. Railroad Commission of Texas, 123 Tex. 521, 73 S.W.2d 505 (Tex.Sup.1934). There the court stated the rule to be that decisions of the Commission, " . . . . should be final and conclusive, unless it acted unreasonably and unlawfully, or unless its decisions had no basis in fact and were arbitrary or capricious. In other words, if the findings and orders of the Railroad Commission in such matters had any reasonable basis in fact, and were not shown to be arbitrary and unreasonable, they must be supported by the court."

In Jones v. Marsh, 148 Tex. 362, 224 S. W.2d 198 (Tex.Sup.1949) the court said: "Stating again the substantial evidence rule, it is that the finding of the administrative body or agency will be sustained by the court if it is reasonably supported by substantial evidence, meaning evidence introduced in court. It is for the court, whether trial or appellate, to determine as a matter of law the reasonableness of the support afforded by substantial evidence, and in making its decision of this question the court examines and takes into consideration all of the evidence."

■ The appellate court's function is not to decide whether the Commission's order is right or wrong, nor to substitute its judgment for that of the agency on issue of fact. "Instead, its sole function in applying the rule is to decide whether the evidence is such that reasonable minds could not have reached the conclusion the administrative body must have reached in order to justify its actions." 23 Baylor Law Rev. 34, 39, supra. See also Lewis, et al. v. Southmore Savings Association, 480 S.W.2d 180 (Tex.Sup.1972); and Reavley, Substantial Evidence and Insubstantial Review in Texas, 23 S.W. Law Journal 239, 241 (1968).

■ We conclude that the testimony and evidence presented to the trial court is not such that it can be held the agency's decision is not reasonably supported by sub-

stantial evidence. While there was evidence before the trial court that appellee Riddick believed that he had been replaced as a consequence of the language contained in the letter from Guinn to O'Connell dated December 22, 1970, there was also his own testimony that he knew several people who went out on strike, but later crossed the picket line and went back to work; that he did not go back to see if there were any more unemployed than he; that he did not know whether or not he would have gotten a job had he crossed the picket line and asked for one; that he did not know of anyone who tried to get a job there who did not get one; that he did know that some went out there and applied for a job and got one; and that he and appellee Burnett walked the picket line until August 20th when each of them quit striking. The terminal manager testified that vacancies existed up until August 1971; that appellee Riddick would have been put back to work in his old job if he had applied for it; that he would have drawn more money doing the same job after he came back; that appellant company was in need of personnel; that some twelve people who went out on strike came back and went to work; and, that at all times during the entire period of the strike there were vacancies. From this state of the record, we cannot say that reasonable minds could not have reached the conclusion The Texas Employment Commission reached in denying the appellees their claims for unemployment compensation. Appellants' points of error two and three are sustained.

The judgment of the trial court is reversed and judgment is here rendered reinstating and confirming the Commission's decision relative to appellee William G. Riddick.

The trial court's judgment is reversed and rendered relative to appellee Lymon M. Burnett since it was without jurisdiction to hear his case.