[Civ. No. 5946. Third Appellate District.—January 25, 1939.]

NELLIE BRANNOCK et al., Respondents, v. WILLIAM BROMLEY et al., Appellants.

J. Hampton Hoge, Hoge, Pelton & Gunther and A. Dal Thomson for Appellants.

Rutherford, Rutherford & Rutherford for Respondents.

TUTTLE, J.—This is an action brought by Nellie Brannock and her husband, Weldon Brannock, arising out of an automobile accident in which the wife, a pedestrian, was admittedly struck by an automobile driven by defendant, Tirzah Bromley, and belonging to defendant Bromley. The jury brought in a verdict somewhat unusual in form, which reads as follows:

"We, the jury in the above entitled cause, find for the defendants, William Bromley and Tirzah Bromley, and

against the plaintiffs, Nellie Bromley and Weldon Bromley, her husband.

"We, the jury, find that both the plaintiffs and defendants were guilty of negligence."

This accident occurred at 7 P. M. on the state highway in the unincorporated town of Yountville, on August 11, 1936. The highway runs northwesterly and northerly through said town. One street crosses the highway immediately north of the 25-mile speed sign. Mrs. Brannock had been visiting a friend who lived on the west side of the highway, and returning home, it was necessary for her to cross the highway at a point opposite said home. She testified that she walked to the edge of the highway, looked both ways, and first saw defendant's car approaching at a distance of about 150 to 200 yards away. She started to cross the highway in a diagonal direction, and was struck by said automobile, receiving personal injuries for which she now seeks compensation. There was testimony to the effect that defendants first saw Mrs. Brannock just as they passed the 25-mile limit sign, and the point where she was struck is some 450 feet beyond said sign. There was evidence to the effect that there were skid or tire marks 90 feet in length and leading to the point of impact, from which it might be inferred that defendants were exceeding the legal speed limit.

Plaintiffs moved for a new trial upon the ground of newly discovered evidence, and in support of said motion they filed three affidavits, one by Weldon Brannock, one by Maude Henninger, and one by James B. Bailey. A reading of the first two affidavits mentioned above indicates, with one exception, that they are designed merely to impeach testimony of witnesses given at the trial. Such evidence is not of a character which would justify the court in granting a new trial. (20 Cal. Jur., p. 98, sec. 63.) The other affidavit by Bailey, however, is in an entirely different category, and what we have to say upon the question of newly discovered evidence will be based entirely upon the latter affidavit. In his affidavit the witness Bailey states as follows: "That he is a resident of the Town of Yountville; that he knows Mrs. Maude Henninger and her husband, Roy Douglas, and Mr. and Mrs. Brannock and knew them on August 11, 1936; that he was on the Southern Pacific railway tracks south of the Henninger place, between 7:00 and 7:30 P. M., on that date when Mrs.

Brannock was injured; that he was west of the highway and about 300 feet from the bridge; that he saw the automobile involved in the accident traveling along the highway near the speed-limit sign, traveling at a high rate of speed, not less than forty-five miles per hour; that no horn was blown at the sign, or any other place; that Mrs. Brannock started across the highway when the automobile was at, or near such sign, when the automobile was at least 300 feet south of her; that Mrs. Brannock was walking rapidly, but not running; that the automobile gained on her very rapidly and when about 100 feet south of her, the car slowed down very rapidly, the tires, or brakes making a loud noise; the car swerved almost off the highway to the right, the left side of the car being just on the pavement going towards the large pole at the southeast end of the bridge, swinging again to the left just missing the pole and hitting Mrs. Brannock when she was near the concrete wall of the bridge; such car running then across the bridge; it appearing to affiant that Mrs. Brannock was clear across the concrete pavement when the car ran over her.''

When the word ''plaintiff'' is used in this opinion, reference is made to Nellie Brannock.

■ It is contended by appellants that the newly discovered evidence is cumulative, and that, under such evidence, there is no reasonable probability that the result of a retrial would be different. In this connection appellants rely upon the case of *Smith* v. *Hale,* 3 Cal. App. (2d) 277 [39 Pac. (2d) 445], but we find nothing in that case relating to the question of cumulative evidence. ''By the Act of 1851, one of the grounds on which a motion for a new trial could be made was, 'newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial'. The subdivision of the section has never been amended, and the corresponding provision of the Code of Civil Procedure is in the same language.'' The code section mentioned is 657, subdivision 4. An early case states the rule pertaining to cumulative evidence as follows: ''The general rule undoubtedly is that the newly discovered evidence must not be cumulative. If it be of that character it will not ordinarily aid the moving party. That it is cumulative is, however, an affirmative proposition, and, unless sufficiently ap-

pearing in the moving papers, ought to be shown to be such by the party opposing the motion. There is no presumption that it is cumulative—the mere presumption is rather to the contrary." (*Hobler* v. *Cole*, 49 Cal. 250, 251.) The newly discovered evidence must be material to the issues, and of so important a character as to satisfy the court that it may reasonably be inferred the verdict would have been different if the newly discovered evidence had been introduced at the former trial. (*Stoakes* v. *Monroe*, 36 Cal. 383.) But a new trial should not be refused for the reason that the evidence is cumulative, if the cumulation is sufficiently strong to render a different result probable. (20 Cal. Jur., p. 96, sec. 62.) A careful consideration of the proffered evidence indicates that the position of appellants in this respect cannot be sustained. There was no direct evidence in the plaintiff's case as to the speed of the automobile. The new evidence shows the speed, at the point of impact, to have been 45 miles per hour, in a 25-mile zone. This bears directly upon the matter of contributory negligence of plaintiff. It also tends to prove negligence on the part of defendants. If the jury should find that the car was actually going 45 miles per hour when plaintiff was struck, and if, at the lawful speed of 25 miles per hour, they might reasonably find that she could have crossed in safety, it must be conceded that such evidence is not cumulative, and that it might have affected the result of the trial. The driver of the car testified that she first saw plaintiff when the latter started to cross, just as her car passed the "speed-sign", which was some 450 feet from the point where the accident occurred. The lawful speed, after the sign was passed, was 25 miles an hour. Assuming that the brakes of the car complied with the law, the automobile, moving at 25 miles an hour, could have been brought to a stop within 58 feet. (Vehicle Code, sec. 670.) Although plaintiff may have crossed the highway diagonally and at a point where there was no designated crosswalk, "there is no rule of statute or ordinance which prohibits 'jay-walking', and it, therefore, is not negligence *per se*. Whether or not it would be negligence under a given state of facts is a question of fact for the jury". (*Gett* v. *Pacific Gas & Elec. Co.*, 192 Cal. 621 [221 Pac. 376].) Here, the jury might reasonably have found that plaintiff had ample time to cross the road in safety, providing that ·

the speed of the automobile did not exceed the lawful speed of 25 miles per hour, and plaintiff had the right, in estimating the time within which she might cross in safety, to assume that plaintiff would obey the law. (*Collom* v. *Bloch*, 70 Cal. App. 33 [232 Pac. 486].) Furthermore, affiant Bailey would be the *only disinterested eye-witness* to the entire episode. We say "disinterested" in the sense that the record before us discloses him to be such. This is another fact which may have moved the trial court to exercise its discretion in the granting of the motion. Concluding the discussion of this phase of the case, we refer to *Kenezleber* v. *Wahl*, 92 Cal. 202–208 [28 Pac. 225], where it is held "that where the question as to whether the evidence is cumulative is involved in doubt, it then becomes a matter of discretion; and unless there has been a manifest abuse of it by the trial court, this court will not interfere". A reading of all the briefs in the case would, in any event, justify the conclusion that here the question is certainly "in doubt".

It is also contended that the showing of diligence is insufficient. ■ "Diligence is a relative term incapable of exact definition. What would amount to due diligence under one state of facts would fall absolutely short of it under another and different state of facts. It depends, therefore, so essentially upon the particular circumstances of each case, with all their distinct and varying phases and bearings, as they have appeared to the lower court at the trial and throughout the conduct of the cause, in determining whether diligence has been used in any particular instance, that this court should hesitate to disturb a ruling upon this ground where it has any substance whatever upon which to rest. The presumption is that the discretion has been properly exercised, and that presumption must be overcome by a clear want of facts before the order will be disturbed. . . . The materiality of this evidence, as above suggested, is not denied, but appellant claims that with any sort of diligence defendant could have informed himself of it in time to produce it at the trial. *But it does not appear that there was anything to put defendant upon inquiry for any such evidence.* The witness, it seems, said nothing about the circumstance, and very likely thought little, if anything, of it; she lived, at the time, it is true, in the same house with defendant, but he was confined to his room, and the next day or so was taken to San

Francisco, where it appears he has since resided, while the witness, we infer from the record, has continued to have her home in Monterey. The lower court might well say, under all the circumstances, that there was not an absence of diligence on the part of defendant; and, having found against him upon the issue to which the newly discovered evidence is addressed, have felt constrained, in view of the conflict as to the value of the services rendered, to grant the motion for a new trial." (*Heintz* v. *Cooper*, 104 Cal. 668, 669, 670 [38 Pac. 511].) ▮ In the instant case the affidavit of Bailey alleges that he knew nothing about the trial until it was over—April 27th; that he did not talk to plaintiffs or their attorney until that time, when he called upon one of them to "learn why he had lost his case". There is also, in the affidavit by plaintiff Weldon Brannock, an allegation, "that prior to the trial, affiant looked long and diligently for, and had others seeking, witnesses who might have seen the automobile of defendants traveling along the highway through Yountville, and could not find such persons apparently, and it so appeared to affiant, no other person than Nellie Brannock saw the automobile before the accident. It was not until Tuesday, April 27, 1937, after the case had been decided against plaintiffs, that affiant was informed by James B. Bailey that he had actually seen the accident and the automobile while being driven along the highway. That his affidavit is attached hereto. That plaintiff has heard of other persons who have said they saw the automobile involved in the accident, while it was traveling along the highway in Yountville, but has been unable to learn their names or places of residence, although plaintiffs have used great diligence over a long period of time to find them". As stated in the Heintz case above, "It does not appear that there is anything to put defendant on inquiry for such evidence." While the affidavit of Weldon B. Brannock contains conclusions, we believe that, read with the affidavit of Bailey, there was a sufficient showing of diligence under the circumstances. There is no hard-and-fast rule to the effect that each step taken by the moving party in searching for witnesses must be detailed in a meticulous manner, though admittedly it is the better practice to specifically enumerate such facts. Such details would no doubt be more essential where a showing was made to the effect that the moving party would be

charged with some knowledge of the existence of the proposed evidence and its source. He would then be put upon notice, and it would be incumbent upon him to be more explicit in detailing a search for such witness. As stated by Hayne in his work on New Trial and Appeal, revised edition, page 432, section 92: "What would amount to diligence, or due diligence, in one case, might fall short, perhaps far short, in another."

The contention is made by appellants that respondent was, in law, guilty of contributory negligence. It is unnecessary to pass upon that question on this appeal. If the newly discovered evidence would disclose further proof of contributory negligence (and we have so held), the case must be retried upon additional facts bearing upon this issue, and a determination of the point on the record of the first trial would be useless and futile. We might add, however, that we have examined the cases cited by appellant upon this point,—particularly those in their "Supplementary Memorandum". In each of them the pedestrian is held to have been negligent as a matter of law. We believe, however, that the factual structure of each of them can be readily distinguished from the case before us. In the case of *Gaston* v. *Tsuruda*, 5 Cal. App. (2d) 639 [43 Pac. (2d) 355], the pedestrian watched the approaching automobile and did not yield the right of way by stopping when she could have been safe, but continued forward, and actually walked into the side of the moving truck while its driver was vainly trying to avoid her. In the case of *Gibb* v. *Cleave*, 12 Cal. App. (2d) 468 [55 Pac. (2d) 938], the court held the pedestrian to have been guilty in law of contributory negligence upon the following ground: "The only analysis of the circumstances is that plaintiff became confused because of his intoxication, and walked directly into the path of danger without taking any precautions for his own safety." In the case of *Francis* v. *Riddle*, 15 Cal. App. (2d) 282 [59 Pac. (2d) 532], the court held the pedestrian to have been negligent in law because "she did not remember that she looked for approaching cars in the directions from which they would come, but only that she gained the impression she had plenty of time to get across the street. Had she looked, she must have seen defendant's car approaching a few feet away, for she had

taken only a step or two from her position of safety when she was struck''.

The duty of a pedestrian to ''yield'' the right of way while crossing a street other than a regular crosswalk, as imposed by section 562 of the Vehicle Code, may call for a higher degree of care upon the part of such pedestrian than would be applied to one crossing at a regular crosswalk, but the question as to whether or not such care was exercised in a given case is one for the jury, unless he is so careless that it can be said he is negligent as a matter of law.

The rule applicable to the facts of this case is found in *Flach* v. *Fikes,* 204 Cal. 329 [267 Pac. 1079], where it is said: ''It cannot be said that a person is guilty of contributory negligence merely because he attempts to cross a street when an automobile is approaching. If that were so he never could attempt to cross a street upon which automobiles are being operated, and consequently where there is almost always an approaching machine. He has a right to expect that those operating automobiles upon a public street will operate them in the manner and at the speed customary at the particular place. Whether such a person is guilty of contributory negligence in attempting to cross a street in front of an approaching automobile would depend upon all the circumstances under which he acted. . . . He may well have reasoned that defendant was traveling at a lawful rate of speed and therefore he could cross the street before defendant's automobile would reach the point in the street over which deceased would be required to pass in crossing the same. Had defendant been traveling at a lawful rate of speed, decedent might have crossed the street in safety. Under the circumstances whether he acted negligently or not was for the trial court, and its findings as to his negligence will not be disturbed on appeal.''

We are unable to say that the trial court abused its discretion; accordingly, the order granting the motion for new trial is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 24, 1939, and an ap-

plication by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1939.