[S. F. No. 16609. In Bank. Apr. 7, 1943.]

JOHN FRANKLIN DARE, Appellant, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA et al., Respondents.

M. Jas. McGranaghan for Appellant.

Earl Warren, Attorney General, and Thomas Coakley, Deputy Attorney General, for Respondents.

SHENK, J.—This is a proceeding in mandamus to compel the respondents, Board of Medical Examiners and its members to cancel the order of the board revoking the petitioner's license to practice as a drugless practitioner, and to restore or re-issue his license. The petition was filed in the superior court. An alternative writ was issued. The respondents filed an answer and the cause was set down for trial. Upon the trial judgment was entered denying the peremptory writ. The petitioner has appealed from that judgment.

The petitioner alleged that he was licensed as a drugless practitioner under a certificate issued by the Board of Medical Examiners; that he also was licensed to practice chiropractic under the provisions of the Chiropractic Act; that he also held a certificate as a clinical laboratory technologist; that in May, 1940, he was charged by the board with displaying a sign using the prefix "Dr." without expressly indicating the type of certificate held, and that, inasmuch as he did not hold a physician's and surgeon's certificate issued by the board, his act was in violation of the Business and Professions Code (sec. 2409); that he filed an answer in the proceedings before the board and that thereafter a hearing was had resulting in the order complained of. The petitioner purported to state a résumé of the oral, documentary and photographic evidence taken at the hearing before the board, including his own testimony. It was alleged that the board failed to produce any evidence that the use of the suffix "N.D.," assuming that it was so used, constituted unprofessional conduct, or that it tended to mislead the public. It was then alleged that the board found the petitioner guilty as charged and ordered that his license as a drugless practitioner be revoked unless he would agree not to use any form of advertising except the words "drugless practitioner" on his professional card, in which case his license would be restored and he would be placed on five years probation; that similar action was taken as to each of the charges; and that "said order has no support whatsoever under the testimony and evidence submitted to and received by defendant Board."

A short time prior to the hearing before the board, the District Court of Appeal had rendered an opinion in the case of *Laisne* v. *State Board of Optometry,* (Cal.App.) [102 P.2d 538]. However, at the time of the trial in the superior court, a petition for hearing in that case had been granted and the cause was then pending in this court. At the commencement of the trial the court inquired about the record of the proceedings before the board. Counsel for the petitioner stated that, regardless of what took place before the board, he was demanding a trial de novo in the sense of a re-trial of the issues involved in the controversy; that he had no intention of producing that record before the court; that he felt that he was not bound by that record and that he participated in the hearing before the board on that theory;

and that he would "not stipulate to the introduction of the evidence taken before the board, or the rulings made before the board." When admonished by the court that he was "taking an awful chance" in assuming such an attitude counsel nevertheless insisted upon his demand for a trial anew without qualification or limitation. No offer of proof was made.

On this appeal it is likewise contended by the petitioner that he was entitled to proceed as on a new trial of the issues of fact without the production of the record of the evidence before the board and without any limitation or qualification because of this court's declarations in the case of *Drummey* v. *State Board of Funeral Directors*, 13 Cal.2d 75 [87 P.2d 848], and in the case of *Laisne* v. *State Board of Optometry*, 19 Cal.2d 831 [123 P.2d 457], decided since the hearing in the superior court, to the effect that in the proceeding in court to question the action of such a board the court is not confined to the record before the board and that the petitioner is entitled to a hearing in the nature of a trial de novo on the issues presented.

The petitioner may not now contend that he was not accorded the right to question the sufficiency of the record before the board, if it had been produced, or was not accorded the right to introduce evidence before the court substantially in accordance with the procedure herein outlined. The record shows that the court offered him such an opportunity but he declined to so proceed on the ground that he was entitled to a trial anew without the introduction of the record before the board.

Prior to the present proceeding the propriety of producing in court and there considering the record of the proceedings before the board had not been questioned. That question is now presented to this court for the first time. The extent of the independent judgment to be exercised by the court in the mandamus proceeding is also pertinent to the discussion and to the determination of the appeal.

█ The discussion has centered first on the nature of the remedy available to one aggrieved by the order of such a board, and secondly on the scope of that remedy. This court has held in numerous cases that such a board does not and cannot exercise judicial functions unless authorized so to do by the Constitution. A few of the more recent cases are *Standard Oil Co.* v. *State Board of Equalization*, 6 Cal.2d 557

[59 P.2d 119]; *Whitten* v. *State Board of Optometry,* 8 Cal. 2d 444 [65 P.2d 1296, 115 A.L.R. 1]; *Drummey* v. *State Board of Funeral Directors, supra; Laisne* v. *State Board of Optometry, supra.* It followed necessarily that certiorari was not the appropriate method of reviewing the action of such a board. ■ Since no other legal remedy was made available this court declared and has adhered to the proposition that a citizen, feeling aggrieved because of the action of such a board, which if undisturbed would have the effect of depriving him of a constitutional right either of liberty or property, should be entitled to have the validity of that action inquired into in a court of justice; that the proper method of inquiring into the propriety of the official acts of such a board is by means of a mandamus proceeding, and that in such a proceeding the court is not confined to the record before the board but may exercise an independent judgment on all of the competent evidence before it.

■ Because the hearing to which the petitioner was entitled was said to be in the nature of a trial de novo, it is contended that the record of the evidence before the board had no proper place in the evidence at the trial. There is no merit in the contention. The significance of the trial designated as a trial de novo must be tested in the light of the nature and scope of the remedy in mandamus thus made available. ■ In its nature mandamus is a proceeding in which equitable principles are applicable. (*Lukens* v. *Nye,* 156 Cal. 498, 507 [105 P. 593, 20 Ann.Cas. 158, 36 L.R.A. N.S. 244]; *Hutchison* v. *Reclamation Dist.,* 81 Cal.App. 427, 433 [254 P. 606]; *Dierssen* v. *Civil Service Commission,* 43 Cal.App.2d 53, 57 [110 P.2d 513].) ■ The scope of such a trial is not to be deemed to be the unqualified or unlimited trial de novo to which a litigant is entitled in the superior court on appeal from a justice's court on questions of fact or on questions of both law and fact (Code Civ. Proc., sec. 976), where, justifiably or not, he may present a "skeleton" case in the lower court and reserve the real showing on the merits for the trial in the superior court. And such a trial is not governed by the rules applicable to the statutory review of the action of the Board of Governors of The State Bar in which this court exercises an independent judgment solely on the facts contained in the record before that board.

The conditions attending the trial in the consideration and

determination of the mandamus proceedings may be said to include the following:

First, the petitioner comes before the court governed by the provisions of the Code of Civil Procedure applicable to mandamus proceedings (Code Civ. Proc., secs. 1084 to 1097 inclusive). In the disposition of such proceedings the court is likewise governed by those code sections. The powers and duties of the court in the premises are provided for therein. Historically the writ of mandamus was devised to provide a remedy where no other remedy existed. Its purpose was to afford a means of procuring justice in the proper field of its operation where there was an asserted legal right and no specific legal remedy for the enforcement of that right. The code provides (sec. 1085) that the writ "may be issued by any court, except a municipal, justice's or police court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

Section 1086 provides: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued up on the verified petition of the party beneficially interested."

Provision is then made for the issuance of an alternative and a peremptory writ (sec. 1087). "When the application to the court is made without notice to the adverse party, and the writ is allowed, the alternative [writ] must be first issued. . . . " (Sec. 1088.)

From an early date in this state, as noted in the Drummey case, it has been held that, where no other remedy is available, mandamus is the proper remedy for one improperly deprived of a professional license by a state-wide administrative board to secure the restoration of his license. Such is the purpose of the present proceeding. The proceeding is initiated by the filing of a verified petition. The practice is to present the petition to the court with a request that the alternative writ be issued ex parte. But a petitioner is not entitled as a matter of right to the issuance of that writ. He must make a proper showing by the allegations of his

petition. If his petition fails to state a prima facie case entitling him to the issuance of the alternative writ, it is within the power of the court to deny it out of hand. This is familiar practice in all courts having original jurisdiction in mandamus. Furthermore, the power of the court is not without a discretion, wisely exercised, to grant or deny either the alternative or the peremptory writ. (*Wiedwald* v. *Dodson,* 95 Cal. 450 [30 P. 580]; *Betty* v. *Superior Court,* 18 Cal.2d 619 [116 P.2d 947]; *Bartholomae Oil Corp.* v. *Superior Court,* 18 Cal.2d 726 [117 P.2d 674].) For an abuse of this discretion on the part of a lower court appropriate remedies are available in a higher court, unless the proceeding is entertained originally in the Supreme Court, where an order denying the writ is not generally reviewable except on a petition for rehearing.

Second: If the alternative writ is issued it may be said that the matter then proceeds as an ordinary civil action. But this is not so in some important particulars. The requirements of the alternative writ are that the respondent do the act demanded or show cause at a specified time and place why he has not done so. In the event of non-compliance the order then is in the nature of an order to show cause where the burden is cast upon the respondent to proceed and show to the satisfaction of the court why he has not performed the act demanded by the petitioner. On the return day, in original proceedings in the Supreme Court and District Courts of Appeal, the rule is that "the respondent may make return, either by demurrer or by answer, or by both. If the return be by demurrer alone, and the demurrer is not sustained, the [peremptory] writ may be ordered to issue without leave to answer over." (Rule XXVI, sec. 3, of Rules for the Supreme Court.) In the superior court, on the return of the alternative writ, the respondent may file an answer under oath (sec. 1089), in which questions of law also may be raised (sec. 1094). But the petitioner is not precluded by the answer from any valid objection to its sufficiency (sec. 1092).

Third: When the matter is at issue on controverted questions of fact, the cause may then be said to proceed as a civil action, that is, it is set down for trial and is tried as a civil action during the course of which any competent evidence may be introduced and received and the ordinary procedural

rules apply. At the close of the hearing the court makes findings of fact and conclusions of law, and enters judgment either denying or granting a peremptory writ.

Fourth: In the course of the trial questions may arise as to the admissibility of offered evidence. The present case is illustrative of those where the admissibility and effect of the record of the evidence before the board is brought into question. None of the cases has specifically declared that such a record is admissible, obviously for the reason that it had been the practice to receive it and its admissibility had not been questioned. The cases have therefore assumed that it would be admissible. It was stated in the Drummey and in the Laisne cases that the court is not confined to the record of the evidence before the board. If the record were not in evidence that statement would be without significance. The admissibility of the record before the board has been assumed for the further reason that such a record is ordinarily essential to the proper determination by the court of the question whether the respondent has performed its official duty in the premises. This is especially true where the issues turn upon questions of fact. The court may refuse to proceed in a proper case unless the record before the board is produced in court. The problem may arise as to who should present that record. Normally the respondent has or should have it prepared as a part of its records and include it as a part of its return to the alternative writ. If not produced until during the course of the trial, the respondent should have it available for the benefit of the court at that time. If the petitioner is required to produce it at his own expense the court, in the event the petitioner prevails, is authorized to impose the expense of preparing it by way of damages pursuant to section 1095 of the Code of Civil Procedure.

Fifth: As stated the court is not confined to the record of the proceedings before the board. That is but another way of saying that the court may decide the cause on all of the competent evidence before it, which is a truism. Since the record before the board is competent evidence it should be considered and weighed along with other evidence in the cause.

It was said in the Drummey case that ''the findings of the board come before the court with a strong presumption of their correctness.'' If there is no requirement for formal

findings and none are made, findings in favor of the prevailing party are implied from the determination of the board. In any event the entire record is a public record, that is, it is the record of the proceedings of a legally constituted public body. It may be assumed that in the ordinary case such a record would disclose that the controversy between the partties had been tried out before the board as fairly and completely as the circumstances of the case would permit. There is nothing in any of the cases to justify the conclusion that one charged with violating the conditions of his professional license may remain silent before the board or present a so-called "skeleton" showing and thereafter secure in court a trial de novo in an unlimited sense.

Nor was it ever contemplated that the time of the court should be consumed in a reiteration of the competent evidence presented to the board and contained in the record of its proceedings. (*Sparks v. Board of Dental Examiners,* 54 Cal.App.2d 491 [129 P.2d 405].) If the record before the board should disclose that the petitioner had intentionally presented a "skeleton" defense in the hearing before the board for the obvious purpose of transferring the controversy from the board to the court, that fact should weigh heavily against him in his endeavor to invoke the equity powers of the court in his behalf in the mandamus proceeding. If, however, it appears that the controversy has been tried out in good faith before the board there is no reason why the time of the court should be taken up or the parties be put to additional expense in duplicating the record before the board.

Sixth: As above noted the trial court is not confined to the record before the board. Nor is the court bound by the findings and determinations of the board. It must also be said that neither party is necessarily bound in all particulars by the record before the board. If it should appear from that record that incompetent evidence had been received by the board, the complaining party should not be foreclosed from objecting on the trial to its admissibility. Also if the board had improperly refused to entertain admissible evidence the litigant should not be foreclosed from offering it at the trial. If additional evidence not included in either category be sought to be introduced by a party, the court has the right to receive it upon a showing that, in the exercise of reasonable diligence, it could not have been introduced before the board. If the credibility of

witnesses before the board be brought in question in the mandamus proceeding the opportunity should be afforded for further examination or to contradict or impeach their testimony under well recognized rules of evidence and procedure. If the proceedings before the board are to be questioned at the trial it would be the duty of the petitioner to set forth his objections in the petition for the writ.

Finally, research discloses that there is nothing novel in denominating the hearing in the mandamus proceeding a trial "de novo," or in placing obviously reasonable limitations upon its general scope at the hearing. The term has been accorded various meanings elsewhere, depending on the purpose of the legislation or the rules of procedure. For example, in admiralty "An appeal . . . vacates the decree of the lower court and there is a trial de novo in the appellate court. Thus, on appeal from the district court to the circuit court of appeals, the proceeding or the trial de novo is on the record on appeal, and on such new or amended pleadings, or such new evidence as the circuit court of appeals may allow or admit." (2 C.J.S., p. 318, citing authorities.) In *Shupee* v. *Railroad Commission of Texas*, 123 Tex. 521 [73 S.W.2d 505], the statute provided for a court action by one aggrieved by the commission's decision which should "be tried and determined as other civil causes." It also provided that the plaintiff had the burden of showing "by the preponderance of evidence" that the decision was unreasonable or unjust as to him. In that case in arriving at its conclusion that the commission's denial of the plaintiff's application for a certificate of convenience and necessity should not be disturbed the court frequently referred to the evidence adduced before the commission. It may be said that the statute there contemplated a "trial de novo." Nevertheless the court held that the legislative intent was that the commission's decision was not to be disturbed unless it had no basis in fact and was arbitrary and capricious; that the court should not substitute its judgment for that of the commission, unless it was shown that the judgment of the commission was without foundation in fact, or was unreasonable or arbitrary. Likewise in *Texas Liquor Control Board* v. *Floyd*, (Tex.Civ.App.) 117 S.W.2d 530, 534, we find the statement: "The de novo hearing before the district court, as provided in the Act, does not mean that the issue of whether or not a permittee's license shall be cancelled is to be heard and determined anew by the court in the

same manner as if no hearing had been had by the Board or its administrator.''

The foregoing cases are referred to for the purpose of illustrating that judicial trial de novo after an administrative hearing is not usually intended as a trial without appropriate consideration of the evidence upon which the administrative body based its action. All of the decisions recognize the important administrative function of such a board in utilizing its facilities in initiating and investigating disciplinary proceedings, conducting hearings, finding the facts and making its orders accordingly. (See *Whitten* v. *State Board of Optometry*, 8 Cal.2d 444, 446 [65 P.2d 1296, 115 A.L.R. 1].)

Those findings and orders have not the finality of a court judgment if attacked in an appropriate court proceedings, such as in mandamus. If in such a proceeding it appears that there was no breach of duty in the matter of receiving or refusing to receive evidence; that there is not other pertinent evidence which the trial court, in the exercise of a wise discretion, should receive, or that such other evidence should be and has been received, then the court has the power to make its findings of fact and conclusions of law and render judgment either denying the relief sought or by an appropriate writ directing the board to perform its official duty in the premises.

The record herein shows that the petitioner drafted the allegations of his petition in line with the foregoing views and procedure. To support those allegations the introduction of the record of the proceedings before the board would have been not only proper, but necessary. However, the petitioner refused so to proceed. In effect, he refused to participate in the trial on the issues of fact if the record before the board was required to be produced.

The attitude thus taken by the petitioner left nothing for the trial court to decide except the issues of law involved. Those questions were argued and the cause was submitted thereon. About three weeks later the court determined those issues adversely to the contentions of the petitioner, and we think correctly.

There is no merit in the contention that the complaint before the board did not state a cause for disciplinary action against the petitioner. In this connection the petitioner contended at the trial and now contends that he was entitled to use the letters ''N.D.,'' meaning Doctor of Naturopathy,

because, so he asserts, the methods of treatment of the sick by a drugless practitioner and by a naturopath are the same, and that the public was not prejudiced thereby. He concedes that he was not licensed to practice naturopathy in this state. Section 2395 of the Business and Professions Code provides that the use by the holder of any certificate of any letters, suffix, indicating that he is entitled to practice a system or mode of treating the sick for which he is not licensed in this state constitutes unprofessional conduct. In 1909 (Stats. 1909, p. 418), the Legislature in effect ratified certificates to practice naturopathy theretofore issued by the Association of Naturopaths of California; but the act did not authorize any future issuance of such certificates and none have since been issued. There is no rule by which a person authorized to practice as a drugless practitioner under the appropriate and revised system (Stats. 1913, p. 722), may successfully claim privileges under an earlier and discontinued system. By section 2395 the Legislature forbade it, and the contention may not prevail that the Legislature could not lawfully do so, or that the restriction adopted was not appropriate to protect the public against deception. ▉ The same conclusion follows a consideration of the petitioner's contention that section 2409 of the Business and Professions Code adopted in 1939 is unconstitutional because it is class legislation. That section provides: ''Unless a person licensed and authorized under this chapter or any preceding medical practice act to use the title 'doctor' or the letters or prefix 'Dr.,' holds a physician and surgeon's certificate, the use of this title or these letters or prefix without further indicating the type of certificate he holds, constitutes unprofessional conduct within the meaning of this chapter.'' The petitioner has failed to show wherein the distinction thus provided is unreasonable and beyond the power the Legislature to afford protection against misleading the public. An even more severe restriction was upheld in *Davis* v. *State Board of Optometry,* 83 Cal. App. 488 [257 P. 197]. (See also *State* v. *Michaels,* 226 Wis. 574 [277 U.W. 157]; *State* v. *Pollman,* 51 Wash. 110 [98 P. 88].)

In view of the state of the record here presented it follows that the trial court had no recourse but to deny the peremptory writ.

The judgment is affirmed.

Curtis, J., Carter, J., Griffin, J. pro tem., concurred.

TRAYNOR, J. Concurring and Dissenting.—The present case, together with *Russell* v. *Miller, post,* p. 817 [136 P.2d 318], is the latest step in the development of a new system of judicial review of the decisions of state-wide administrative boards. The earlier cases (*Standard Oil Co. of California* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P. 119]; *Whitten* v. *State Board of Optometry,* 8 Cal.2d 444 [65 P.2d 1296, 115 A.L.R. 1]; *Drummey* v. *State Board of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848]; *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205]; *Laisne* v. *State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457]) have been comprehensively analyzed elsewhere and their weaknesses exposed. (McGovney, *Administrative Decisions and Court Review Thereof, In California,* 29 Cal.L.Rev. 110; McGovney, *The California Chaos in Court Review of the Decisions of State Administrative Agencies,* 15 So.Cal.L.Rev. 391; Rode, *Administrative Adjudication in California and Its Review by the Writ of Certiorari,* 25 Cal.L.Rev. 694; Turrentine, *Restore Certiorari to Review State-Wide Administrative Bodies in California,* 29 Cal.L.Rev. 275; Turrentine, *The Laisne Case—A Strange Chapter in Our Jurisprudence,* 17 State Bar Journal, 165; Elliott, *Certiorari and the Local Board,* 29 Cal.L.Rev. 586.) When the majority of the court in *Laisne* v. *State Board of Optometry, supra,* held that if the order of an administrative board revoking a license "is questioned in a court of law, then under the Constitution of this state the petitioner must be given a trial de novo on the issues involved" (19 Cal.2d 831, 845) it was generally assumed that they meant what the Latin term expresses, a new trial of the matter all over again. The author of the majority opinion himself so defined it in his opinion in *Collier & Wallis* v. *Astor,* 9 Cal.2d 202, 205 [70 P.2d 171], and the dissenting opinion in the Laisne case assumed that this definition continued to hold firm, without provoking either its repudiation or qualification in the majority opinion. It is now clear, however, that such a trial is no longer contemplated. The complaining party finds that he is entitled, not to a trial de novo, but to a "review" of the action of the board "in the nature of a trial de novo." This review by a proceeding in mandamus has many characteristics of certiorari, some characteristics of a motion for new trial, but few if any characteristics of mandamus.

The new procedure resembles certiorari in the following particulars:

(1) The record of the proceedings before the board is not only admitted in evidence but is "ordinarily essential to the proper determination by the court of the question whether the respondent has performed its official duty in the premises." This definition of the court's function aptly describes a proceeding in certiorari (compare Code Civ. Proc. sec. 1074), but is foreign to the traditional conception of a proceeding to compel the performance of a duty prescribed by law, for example the duty of an administrative board to take jurisdiction and render a decision. Mandamus does not normally extend to the revision or dictation of the administrative decision. (Cal. Code Civ. Proc. sec. 1085; McGovney, *op. cit.* 29 Cal.L.Rev. 110, 149.)

(2) The respondent is required to produce the record. If the proceeding were in certiorari instead of mandamus it would be governed by section 1071 of the Code of Civil Procedure, providing that the writ specify that the one to whom it is directed must produce a transcript of the record and proceedings at a given time and place. The majority of the court have precluded themselves from invoking section 1071 only to find themselves compelled to formulate its equivalent: "The problem may arise as to who should present that record. Normally the respondent has or should have it prepared as a part of its records and include it as a part of its return to the alternative writ. If not produced until during the course of the trial, the respondent should have it available for the benefit of the court at that time. If the petitioner is required to produce it at his own expense the court, in the event the petitioner prevails, is authorized to impose the expense of preparing it by way of damages pursuant to section 1095 of the Code of Civil Procedure." Something is lost by language that does not specify the person who must produce the record, and that raises any doubt as to when it should be produced.

(3) The trial court may review the record as it would on certiorari. In the view of the majority opinion it is the function of the trial court to exercise its discretion to grant or deny either the alternative or peremptory writ of mandamus, and the function of the appellate court to determine whether the trial court has abused its discretion. The majority opinion in fact looks to the trial court to exercise its discretion so as to obviate unnecessary retrials in the court. It is anticipated that "in the ordinary case such a record would disclose that the controversy between the parties had been tried out before the board as fairly and completely as the circumstances

of the case would permit.'' Criticism of the *Laisne* case has been taken to heart in the words: ''It was never contemplated that the time of the court should be consumed in a reiteration of the competent evidence presented to the board and contained in the record of its proceedings. . . . If it appears that the controversy has been tried out in good faith before the board there is no reason why the time of the court should be taken up or the parties put to additional expense in duplicating the record before the board.''

In an actual certiorari proceeding, the court would be confined to the record of the proceedings before the administrative board, and the board's determination would be quashed if the record disclosed that the board had acted outside its jurisdiction, or had made serious errors of law in the exercise thereof, or that its decision was not supported by substantial evidence. Under the system devised by the majority, however, the record is considered and weighed along with other evidence, a procedure unknown to the common law. The rule embodied in section 1870(8) of the Code of Civil Procedure is that if a witness is deceased, or out of the jurisdiction, or unable to testify, his testimony given in a former action between the parties, relating to the same matter may be admitted upon another trial. ''The report of the official reporter, or official reporter pro tempore, of any court, duly appointed and sworn, when transcribed and certified as being a correct transcript of the testimony and proceedings in the case is prima facie evidence of such testimony and proceedings.'' (Code Civ. Proc. sec 273.) There is no comparable provision with respect to administrative determinations.

The majority opinion makes new evidence admissible in the following circumstances.

(1) ''If it should appear from the record that incompetent evidence had been received by the board the complaining party should not be foreclosed from objecting on the trial to its admissibility.'' The majority opinion does not make clear by what rules the competency of the evidence is to be determined, or whether objection to its admission must be made at the board hearing. Under established precedents administrative boards are not required to follow the common law rules of evidence, even when the statutes governing their procedure are silent in this regard. (Wigmore, Evidence, (3rd ed.) vol. 1, secs. 4b-4c, pp. 27-95; Stephens, Administrative Tribunals and The Rules of Evidence.) Likewise objections to the admission of evidence must be made to the administrative board

and cannot be raised for the first time in a court review. (*State Compensation Insurance Fund* v. *Industrial Acc. Com.*, 195 Cal. 174, 184 [231 P. 996].)

(2) "If the board had improperly refused to entertain admissible evidence the litigant should not be foreclosed from offering it at the trial." The liberal rules governing the admission of evidence before administrative boards make it unlikely that many errors of this sort will occur. In any event an administrative board should have the opportunity of correcting its own errors by a new hearing in which it can pass upon the new evidence. If instead, the superior court receives the evidence it may rest its decision upon it, even though the Legislature has delegated this responsibility to the administrative board. The superior court acts in its proper capacity only insofar as it reviews the record of the board proceeding, but steps out of character to take the place of the board by examining evidence that has not been presented thereto and arriving in effect at an administrative determination. (*Cf Mojave River Irr. District* v. *Superior Court*, 202 Cal. 717, 725-730 [262 P.2d 724].) With respect to many issues it does not have the specialized background characteristic of administrative officers. "Thus the Commissioner of Corporations (with, of course, the assistance of his staff) determines whether a licensed securities broker has sufficient financial responsibility to carry out the obligations incident to operations as broker, the Insurance Commissioner, whether the investments of a licensed company have become insufficiently liquid to satisfy the demands which in the ordinary course of events may be made against it; a district board of oil and gas commissioners, whether there has been an unreasonable waste of natural gas from producing wells, and if so, to what extent gas production should be cut down; the Board of Medical Examiners, whether an abortion was medically necessary. If the Legislature had believed that such matters in connection with license revocation or other regulation would have been handled better by our Superior Courts, the latter would presumably have been entrusted with them." (Turrentine, The Laisne Case—A Strange Chapter in Our Jurisprudence, 17 State Bar Journal 165, 168.) In any event the courts are already so overburdened with their own work that they may well be driven to avoid undertaking administrative investigations either by denying the alternative or peremptory writ of mandamus or remanding the cases to the administrative boards.

(3) "If additional evidence not included in either category ((1) or (2) above) be sought to be introduced by a party, the court has the right to receive it upon a showing that, in the exercise of reasonable diligence, it could not have been introduced before the board." The majority opinion here borrows from the procedure governing a ruling on a motion for new trial. Section 657 of the Code of Civil Procedure provides that a new trial may be granted because of "Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." Presumably superior courts will supplement the new system by following other traditional rules with respect to motions for new trial, namely, that motions for new trial on the ground of newly discovered evidence are looked upon with distrust (*Smith* v. *Schwartz*, 14 Cal.App.2d 160 [57 P.2d 1386], and cases there cited), and that such evidence must not be merely cumulative, but must satisfy the court that had it been introduced at the previous trial the verdict might have been different. (*Brannock* v. *Bromley*, 30 Cal.App.2d 516 [86 P.2d 1062]; see 20 Cal.Jur. 90-99; McBaine, Cases on Trial Practice, 639-647; Hayne on New Trial and Appeal, Rev. ed., p. 408.) Presumably also the appellate courts will follow established precedents in this field allowing the superior court judge a wide discretionary power in granting or denying a new trial on the ground of newly discovered evidence. (See *Cooper* v. *Kellogg*, 2 Cal.2d 504 [42 P.2d 59], and cases there cited.) While the majority opinion speaks of the court's right to receive the evidence, it makes no reference to any correlative right of the parties to introduce it, and this silence is consistent with its emphasis elsewhere on the power of the trial court to grant or deny the writ in its discretion.

It is clear that evidence at least cannot be deliberately withheld. "If the record before the board should disclose that the petitioner had intentionally presented a 'skeleton' defense in the hearing before the board for the obvious purpose of transferring the controversy from the board to the court, that fact should weigh heavily against him in his endeavor to invoke the equity powers of the court in his behalf in the mandamus proceeding." The very effort to circumvent a bona fide administrative hearing would militate against the possibility of favorable judicial action. The majority opinion thus goes far to allay the fears engendered by the Laisne case that an admin-

istrative hearing would be reduced to "something in the nature of an inquest, or at most, to something like a preliminary hearing in a criminal proceeding where the administrative agency will expose its entire case and the licensee will save his evidence for the Court." (Attorney General's Petition for Rehearing in Laisne Case, p. 53.) With so much ground regained it is difficult to understand why the administrative board should still not be the first to weigh the new evidence. In motions for new trial not only does the trial judge who hears the evidence have wide discretion in passing upon the motion, but his ruling is rarely disturbed, since he is the one best qualified to determine whether there might have been a different result had the newly discovered evidence been disclosed. Similarly, the administrative board, conversant with the evidence it has already received on a matter within its special province, is uniquely qualified to receive the new evidence and integrate it with the old. There is wisdom in the rule that administrative remedies be exhausted before resort to the courts, and it is not consonant with such a rule to allow evidence to be presented to the superior court that has not been presented to the administrative board. The specialized knowledge and experience of the board enables it to make an effective preliminary inquiry into technical problems outside the ken of most judges. Without this canalization of technical problems they would soon flood the courts, diverting them from other pressing tasks. As it is, many of these problems are resolved expeditiously by administrative determinations so that judicial review never becomes necessary. When new evidence emerges, it is as a new piece of a pattern familiar to the board whose consideration thereof may make resort to the courts unnecessary. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].)

(4) "If the credibility of witnesses before the board be brought in question in the mandamus proceeding the opportunity should be afforded for further examination in order to contradict or impeach their testimony under well recognized rules of evidence and procedure." If the new system here followed the procedure on motion for new trial, newly discovered evidence designed merely to impeach or contradict a witness would not be admitted. (See cases cited in 20 Cal.Jur. 98.) Even if it departs from the procedure for motion for new trial superior court judges in all likelihood will not go far afield from familiar landmarks, given their discretionary

power, which the majority opinion emphasizes. It would in any event often be difficult to locate witnesses who testified at a board meeting. If a witness is not available for the court proceeding he cannot be impeached by previous inconsistent statements, for under section 2052 of the Code of Civil Procedure "the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them." (*People* v. *Compton*, 132 Cal. 484 [64 P. 849]; see Hale, *Impeachment of Witness by Prior Inconsistent Statements*, 10 So.Cal.L.Rev. 135.) His testimony therefore apparently remains in the record. Once again, if an error has arisen in an administrative hearing, the administrative board should be given an opportunity to correct that error.

The majority opinion is for the most part a retracing of the way back from the concept of a trial de novo that never materialized. It stops short of a complete retreat to review by certiorari of administrative decisions, by a guarded permission of new evidence in the court proceeding in rare circumstances, together with a provision that the superior court form an independent judgment on all the evidence. The attendant qualification that "the findings of the board come before the court with a strong presumption of their correctness" suggests that the distinction between the new system and old may be more artificial than real.

The majority opinion cites two Texas cases in support of its statement that trial de novo is not always to be taken literally. The Texas courts, however, were not engaged in redefining a requirement of trial de novo made by themselves, nor were they inquiring into the scope of review under mandamus or any other common-law writ. They were interpreting statutes that prescribed statutory modes of review, conceding that the Texas Legislature has power to prescribe the mode and extent of court review of the decisions of Texas administrative agencies. In *Shupee* v. *Railroad Commission of Texas*, 123 Tex. 521 [73 S.W.2d 505], the statute provided for review of any decision of the Railroad Commission refusing to grant a certificate of convenience and necessity, by "petition" in a district court comparable to the superior court in California. The statute provided, "Said action shall

be tried and determined as other civil causes in that court."
The Supreme Court of Texas thought that the Legislature in
granting powers to the commission did not intend that the
court should substitute its judgment for that of the commis-
sion, and adopted by quotation from Corpus Juris the rule
that the court should not disturb the findings of the commis-
sion if they are supported by substantial evidence. Under its
holding that the court could not reweigh the evidence the
review had the same scope as certiorari review in this state.

In *Texas Liquor Control Board* v. *Floyd,* (Tex.Civ.App.)
117 S.W.2d 530, review of the Board's determinations was by
statuory "appeal" to a district court. The statute provided
that in the proceeding on this appeal, "the trial shall be de
novo under the same rules as ordinary civil suits." The in-
consistency of the statute in characterizing the court review
as both an appeal and a trial de novo has led the Texas courts
to interpret this statute as not intending that the court should
substitute its judgment for that of the commission. The Court
of Civil Appeals, purporting to follow earlier decisions under
the same statute, said, "As we view the law in such cases as
this, the district court may not hear testimony which was not
produced before the Board or its Administrator and determine
even from a preponderance thereof, whether or not a dealer's
license shall be cancelled. The court has not the power to sub-
stitute its judgment for that of the Board unless it appears
that there was no testimony of probative and substantial effect
before the Board to support its judgment and decree, or that
the Board acted arbitrarily and capriciously in cancelling the
license." (Ibid., 534.) Again the holding is that the review
intended by the Legislature has the scope of certiorari review.

The majority of the court seek in these Texas decisions a
justification for redefining the requirement of their own
making that review of the decisions of state agencies in Cali-
fornia must be by trial de novo. Confronted as they are, how-
ever, by the decision in *Standard Oil Co. of California* v.
*State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119], that
certiorari review cannot be accorded such agencies, they stop
short of following the Texas decisions to the end. Instead they
redefine their novel conception of mandamus as a substitute
for certiorari. They also redefine the trial de novo as some-
thing so close to certiorari review that it is difficult to dis-
tinguish one from the other. The present confusion can be
ended only by an outright abandonment of the decision in the

Standard Oil Company case, and a return to the earlier decisions which that case over-ruled. Stare decisis is weak support for a decision that disregarded it.

The difficulties the court has experienced since the Standard Oil Company case arise from the abstraction that "judicial functions" cannot constitutionally be vested in administrative officers and boards exercising state-wide authority. In the early days of the state, the Practice Act of 1851, section 456, defined certiorari as including review of the decisions of a "board, or officer, exercising judicial functions." It obviously recognized that some boards and officers exercise "judicial functions." Section 456 was merely a restatement of the common-law scope of certiorari (see Goodnow, *The Writ of Certiorari*, 6 Pol.Sci.Quart. 493), and was reproduced in section 1068 of the Code of Civil Procedure of 1872. Undoubtedly the provisions of the Constitution of 1879 authorizing the superior and appellate courts to issue writs of certiorari meant certiorari as then defined.

Disregarding the historical uses of the writ and the implications of section 456 of the Practice Act, this court in 1856 in *People* v. *Hester*, 6 Cal. 679, held that a decision of a board of county supervisors was not reviewable by certiorari, on the ground that the separation of powers principle of article III of the Constitution of 1849 forbade vesting "judicial functions" in a board that also possessed legislative and executive functions, and that none of the functions of the board could therefore be regarded as judicial. Chief Justice Murray said, "Now the supervisors, not being judicial officers, or charged with the exercise of judicial duties, it results that the writ cannot be directly properly to them."

The opinion in the Standard Oil Company case, eighty years later, employs the same reasoning with respect to boards exercising state-wide powers, although *People* v. *Hester* was overruled the year after it was decided, in *People* v. *Supervisors of El Dorado County*, 8 Cal. 58. Chief Justice Murray, confessing error, said that the functions of boards and supervisors had always been "various and manifold; sometimes judicial," and that the principle of separation of powers was not intended to forbid the practice of vesting varied powers in such boards. Since then this court has recognized in numerous decisions that a great variety of local officers and boards exercise "judicial functions" in the sense of certiorari review. (See Elliott, *Certiorari and the Local Board*, 29 Cal.L.

Rev. 586.) The court has distinguished the "judicial functions" of administrative boards from their legislative, executive, ministerial, and purely discretionary functions. The trend of the decisions has been to regard a board as exercising "judicial functions" when discharging a duty to determine property or other legal rights in accord with law and the evidence taken at a hearing. There is no longer any doubt that local boards may constitutionally be vested with authority to make first instance decisions of questions of law and issues of fact. (*Laisne* v. *State Board of Optometry, supra,* at 847; *Walker* v. *City of San Gabriel,* 20 Cal.2d 879 [129 P.2d 349].) The function of the courts has been to review their proceedings by certiorari and set aside their decisions on points of law if erroneous and on questions of fact if there was no substantial evidence to support the findings.

In recent decisions a majority of this court have said that state boards cannot constitutionally be given "judicial functions." They did not, however, carry their reasoning to the logical conclusion that all the statutes creating state boards with fact-finding powers were invalid, and that the boards themselves were illegal. They only went so far as to hold that the functions of the boards could not be regarded as judicial, within the rule that certiorari lies to review the determinations of boards and officers "exercising judicial functions." Nevertheless, the premise of this conclusion was that even power to determine in the first instance rights of property and other legal rights could not constitutionally be vested in state boards. In the Drummey case the court predicated this doctrine on the due process of law clause of the Fourteenth Amendment. This was manifest error because the Supreme Court of the United States has long held that the requirement of due process is not infringed by vesting such power in administrative boards. (*United States* v. *Ju Toy,* 198 U.S. 253 [25 S.Ct. 644, 49 L.Ed. 1040]; and many other decisions cited in the dissenting opinion in the Laisne case.) This court seems not to have noted that if due process of law was denied when the state vested such power in state boards, it was also denied when the state vested such power in local boards.

Later a majority of this court found the source of the unconstitutionality of vesting "judicial functions" in state boards in the judiciary clause of the California Constitution. (Art. VI, sec. 1; *Laisne* v. *State Board of Optometry, supra.*) The reasoning was that this clause vests all the judicial power

of the state in the courts created by the Constitution, except that which may be vested by the Legislature in local "inferior courts," which it is authorized to establish. The rationalization for vesting "judicial functions" in local boards is that they are "inferior courts" established by the Legislature under the authority given in article VI. That authority, however, is for the establishment of local "courts," not local administrative boards. If indeed they are courts it is remarkable that the Legislature may vest in them a variety of other powers not judicial. Although article III of the Constitution of the United States requires that the judicial power of the national government be vested in the courts therein named, Congress, with the approval of the Supreme Court, has vested "judicial functions" in numerous federal administrative agencies. To explain why Congress has this power, and the state Legislature does not, a majority of this court stated that all the federal agencies are "inferior courts," which Congress is authorized by article III to establish. They overlooked that the tenure of the personnel of these agencies has never been the tenure that article III requires for judges of courts authorized by it.

It is a false premise that requires such rationalization. The Supreme Court of the United States long ago recognized that some powers of courts are exclusively judicial while others are of a nature that they may be exercised either by courts or by administrative agencies, and that administrative agencies have always exercised some powers identical with the powers of the courts. As early as 1855 in *Murray* v. *Hoboken Land & Imp. Co.*, 18 How. 272 [15 L.Ed. 372], the court held valid an act of 1820 authorizing administrative officers in the Treasury to determine the existence and amount of delinquency in the accounts of revenue collectors and to issue distress warrants on their property to enforce collection. The court held that there was no denial of due process of law and no violation of the judiciary article of the Constitution. The court declared "That the auditing of the accounts of a receiver of public moneys may be, in an enlarged sense, a judicial act, must be admitted. So are all those administrative duties the performance of which involves an inquiry into the existence of facts and the application to them of rules of law. . . . We do not doubt the power of Congress to provide by law that such a question shall form the subject-matter of a suit in which the judicial power can be exerted. The Act of 1820

makes such a provision for reviewing the decision of the accounting officers of the treasury. But until reviewed, it is final and binding; and the question is, whether its subject-matter is necessarily, and without regard to the consent of Congress, a judicial controversy. And we are of the opinion it is not." It may be noted that this familiar decision with its interpretation of a judiciary clause of a constitution was made a quarter of a century before the adoption of the present Constitution of California.

This doctrine was clearly explained by Chief Justice Hughes in *Crowell* v. *Benson,* 285 U.S. 22 [52 S.Ct. 285, 76 L.Ed. 598]. The question there was whether Congress could vest in an administrative officer the adjudication of claims brought by employees against employers for compensation arising under a workmen's compensation law enacted by Congress. The court held that the statute was valid, and that the decisions of the administrative officer on all ordinary issues of fact were final if supported by substantial evidence. Thus the judicial review authorized under the statute, while not expressly called certiorari review, has the scope of the review afforded by that writ. The court recognized that the statute authorized the administrative officer to determine "the liability of one individual to another" (p. 31), a function often given courts. It said that the statute empowered the officer to determine "questions of fact as to the circumstances, nature, extent and consequences of the injuries sustained by the employee." (P. 54.) Yet the court found no objection to vesting these "judicial functions" in the administrative officer. It said "the reservation of full authority to the (reviewing) court to deal with matters of law provides for the appropriate exercise of the judicial function in this class of cases." (P. 54.) Concluding this phase of the case Chief Justice Hughes said: "For the purposes stated, we are unable to find any constitutional obstacle to the action of the Congress in availing itself of a method shown by experience to be essential in order to apply its standards to the thousands of cases involved, thus relieving the courts of a most serious burden while preserving their complete authority to insure the proper application of the law." On this point all the justices were in agreement.

There was a second point on which they were divided. The majority held that there were two issues of fact that might arise in an adjudication of claims under the statute, to which a different rule applied. They held that where it was con-

tended that the place where the accident occurred was not navigable waters, or that the claimant was not an employee of the defendant when the injury was incurred, the essential powers of the courts could be preserved only in the reviewing court were to give a trial de novo on these fact issues. The reasons given for singling them out were (a) that this statute, enacted by Congress in exercise of its power to make admiralty law, could constitutionally apply only to accidents occurring on navigable waters, and (b) that Congress could not apply the principle of compensation for injuries where they occurred without fault of the defendant, unless an employment relation or comparable relation existed between the claimant and the defendant. On this requirement of trial de novo of the two excepted issues, Justices Brandeis, Stone, and Roberts dissented. In the course of his opinion on the second point, Chief Justice Hughes phrased the new doctrine as if it were a general rule that in all cases where a constitutional right depends upon the decision of an issue of fact there must be a trial de novo in a court on that issue. (See pp. 56, 60.) This novel doctrine was not expanded by the Supreme Court into a general rule (see McGovney, *op. cit.* 29 Cal.L.Rev. 110, 125-129, 138-142), but even if it had been it would have no application to a case like *Drummey* v. *State Board of Funeral Directors, supra.* Nevertheless this court cited *Crowell* v. *Benson* in support of its holding that the fact issues decided by the board must be independently redetermined by a court, even though there was no issue of constitutional right in that case. Drummey did not question the constitutionality of the statute, his license was suspended by the board under a statute admittedly valid, and the only issue of fact was whether he had done any act that was a ground for suspension under the statute. Nor was any issue of constitutional right raised either in the Laisne case or in the present case. If the petitioner advertised in a manner forbidden by a valid statute he cannot claim that any constitutional right is violated by suspension of his license. A comparable problem is presented by a criminal statute that defines the act constituting a crime. If the statute is constitutional, the issue of fact whether the accused committed the prohibited act raises no constitutional issue. Yet the majority opinion in this case still clings to the statement that the new rule is founded on the protection of "a constitutional right either of liberty or property."

In the present case the question is the scope of judicial

review of a decision of an administrative board authorized to adjudicate issues of fact arising in the application of a valid statute. Had Dare questioned the validity of the statute and the board had ruled against him, he could have had the decision set aside by certiorari if the reviewing court concluded that the statute was invalid. Whatever were the early limitations in England on the issues open on certiorari, the courts of this country long ago held that on certiorari the reviewing court can set aside an administrative decision based upon an error of law. (A leading case to this effect is *People v. Smith*, 45 N.Y. 772, decided in 1871; see Goodnow, *op cit.* 6 Pol. Sci. Quart., 493.) That rule was embodied in section 462 of the Practice Act of 1851 and in section 1074 of the Code of Civil Procedure of 1872 by the provision that the reviewing court may "determine whether the inferior tribunal, Board, or officer has regularly pursued the authority of such tribunal, Board or officer." It should also be observed that if a board follows an unconstitutional procedure, or fails to follow a procedure prescribed by statute, its decision may be set aside on certiorari.

The recent decisions requiring trial de novo of the findings of administrative agencies exercising state-wide power have assumed that for various reasons it is unconstitutional in this state to vest "judicial functions" in such agencies, all this to a single result, the prevention of review of their decisions by writ of certiorari. Do the functions of these agencies cease to be "judicial" when their decisions are reviewable by the majority's newly qualified trial de novo? Has not the majority opinion by its very qualifications of trial de novo, described in the first part of this opinion, belied its own contention that it is unconstitutional to authorize such boards to make first instance decisions on questions of law and issues of fact?

I concur in the judgment insofar as it holds that it was proper for the trial court to deny the alternative writ of mandamus. I dissent on the ground that *Standard Oil Co.* v. *State Board of Equalization, supra,* should be overruled and that the present decision should be without prejudice to the right of the petitioner to apply for certiorari.

Gibson, C. J., and Edmonds, J., concurred.